EDDINGTON ESTATE v EPPERT OIL COMPANY

Docket Nos. 90273, 90274. Argued December 4, 1991 (Calendar No. 9).
    Decided September 29, 1992.

Charlotte Eddington, as personal representative of the estate of
    Bobby G. Eddington, deceased, brought a third-party tort action
    in the Wayne Circuit Court against Eppert Oil Company, the
    manufacturer, and Ashland Oil, Inc., and Ashland Chemical,
    Inc., the sellers, of a chemical solvent that caused the dece-
    dent's death in the course of his employment at a subsidiary of
    The Budd Company. Before commencement of the action, work-
    ers' compensation benefits had been paid by the employer to
    the plaintiff as the decedent's surviving spouse and to his minor
    children. Consent judgments were entered against the defen-
    dants, and the court, Roland L. Olzark, J., distributed the
    wrongful death proceeds by allocating a portion to the dece-
    dent's wife and his parents for loss of society and companion-
    ship and attorney fees, and held a portion in escrow, pending
    determination of the amount of a workers' compensation lien.
    In addition, the decedents' minor children each were to receive
    monthly a specified amount until their nineteenth birthdays to
    compensate them for the loss of financial support and their
    father's society and companionship, and thereafter further
    specified payments were to be made to them for an additional
    five years. The Budd Company intervened by stipulation to
    assert its workers' compensation lien, arguing that the lien
    should attach to the entire proceeds. The court permitted the
    lien to attach only to those proceeds to be received by the
    children after age eighteen. The Court of Appeals, REILLY, P.J.,
    and MICHAEL J. KELLY and H. E. DEMING, JJ., affirmed in part
    and reversed in part, holding that the lien should attach to the
    entire third-party recovery by the children without regard to
    apportionment of damages, as well as to the plaintiff's damages
    for loss of consortium (Docket Nos. 113283, 113323). The plain-
    tiff appeals.

        In an opinion by Justice BRICKLEY, joined by Justices RILEY
    and GRIFFIN, and a partial concurrence by Justice MALLETT, the
    Supreme Court held:

        An employer or a workers' compensation carrier may seek

reimbursement from a third-party tort recovery for the death of an employee, including damages for loss of consortium or loss of society and companionship, where the recipient of the tort recovery also is eligible to receive workers' compensation benefits.

Justice BRICKLEY, joined by Justices RILEY and GRIFFIN, stated that an employer or workers' compensation carrier should be entitled to seek reimbursement from the entire amount of a third-party tort recovery obtained as a result of the death of an employee, regardless of the classification of the damages (economic or noneconomic) or whether the recipient of the proceeds was entitled to receive compensation benefits.

The wrongful death act permits the personal representative of a decedent's estate to bring an action to enforce the liability of any tortfeasor who contributes to the decedent's death. Any recovery obtained by the personal representative is to be received on behalf of all who are entitled to relief under MCL 600.2922(3); MSA 27A.2922(3). The Workers' Disability Compensation Act, MCL 418.827(5); MSA 17.237(827)(5), permits an employer or workers' compensation carrier to seek reimbursement from any recovery against a third party for damages resulting from the death of an employee. The reimbursement provision is clear and unambiguous and applies to any third-party tort recovery obtained as a result of the compensable death of an employee without regard to whether the damages are compensable under the WDCA. Thus, an employer or compensation carrier should be permitted to seek reimbursement from the entirety of a third-party tort recovery resulting from the death of an employee even where a portion of that recovery includes damages not compensable under the WDCA.

Application of § 827(5) to a recovery for loss of society and companionship by a spouse for the death of an employee should not be predicated upon whether the spouse was a direct or indirect recipient of compensation benefits. The subsection clearly indicates that any recovery obtained from a third party is subject to a claim of reimbursement by the employer or carrier before distribution to an employee or the employee's dependents or personal representative. It is not necessary to evaluate the eligibility of a tort-recovery recipient for compensation benefits before allowing the employer or carrier to obtain reimbursement from any recovery. The phrase "for any amounts paid or payable under this act" does not limit application of § 827(5) to benefits directly received by a particular person, but, rather, limits the amount of reimbursement that may be recouped by an employer to the amount actually paid

as compensation. Any remaining excess should be credited against future compensation benefits that may be owed.

Nothing in § 827(5) requires, as a condition precedent to recoupment, that a third-party tort-recovery recipient be eligible for compensation benefits. It expressly provides that the employer or compensation carrier is entitled to reimbursement and that the balance then is to be given to the employee or to the employee's dependents or personal representative, depending upon the manner in which the third-party tort recovery was obtained. In this case, the decedent's parents received a portion of the recovery through the efforts of the personal representative under the wrongful death act. Thus, reimbursement to the employer or carrier appears to attach before distribution of the proceeds to the personal representative and before any subsequent distribution to persons enumerated in the act. Such an analysis of § 827(5) permits each part of the provision to be internally consistent. Accordingly, any third-party tort recovery for damages resulting from the death of an employee is available to an employer or carrier for reimbursement to the extent compensation was paid or is payable to the date of recovery and is a credit for future obligations.

In this case, The Budd Company should be entitled to seek reimbursement from the entire tort recovery obtained by the personal representative because of the decedent's wrongful death, to the extent that benefits had been paid or are payable to the date of recovery. Any balance remaining after application of § 827(5) should be allocated to the personal representative for disposition in accordance with the distribution ordered by the trial court. In addition, the balance that is allocated to the personal representative after reimbursement should be treated as a credit toward future compensation obligations owed by The Budd Company under the WDCA.

Justice MALLETT, concurring in part and dissenting in part, stated that the status of the claiming party dictates whether an employer's lien attaches for reimbursement of compensation benefits paid or payable under the workers' compensation act.

While third-party tort recoveries obtained by the spouse and children of a deceased employee in a wrongful death action are subject to the employer's reimbursement lien, the reimbursement provision of § 827(5) does not apply to loss of society and companionship damages allocated to the nondependent parents of a deceased employee. Application of that provision depends on whether the recipient is eligible.

Affirmed in part and reversed in part and remanded for further proceedings.

Justice BOYLE, joined by Chief Justice CAVANAGH, dissenting,

stated that damages allocated for loss of consortium may not be reached by an employer's lien for repayment of compensation benefits paid or payable under the workers' compensation act. While the act is not clear and unambiguous, it supports the premise that it is the nature of the recovery in a third-party tort action that dictates whether an employer's lien will attach for reimbursement of compensation benefits paid or payable under the act. Also, legislative acquiescence in such a judicial interpretation of the act may be inferred from a lack of rejection in subsequent amendments. Because the language of the act is unclear, and irrespective of whether the claiming party is a workers' compensation beneficiary, recovery for loss of consortium is not subject to an employer's reimbursement lien.

Justice Levin, writing separately, stated that an employer's lien does not apply to a portion of a wrongful death recovery awarded for the loss of the society and companionship of the deceased.

Although the $75,000 being held in escrow was specifically designated for loss of society and companionship, it is clear that the designation was designed to avoid the employer's lien. The value of the recovery exceeded $600,000. The employer paid approximately $75,000 to Charlotte Eddington for her support and the support of her children between the date of death, February 16, 1982, and the approval of the settlement in the fall of 1988. Clearly, a substantial portion of the settlement, possibly as much as $75,000, should have been allocated to the pecuniary injury suffered by Charlotte Eddington and her children resulting from loss of support between the date of death and the date of the settlement.

The case should be remanded to the Court of Appeals to consider the employer's alternative request that this action be remanded to the trial court for an evidentiary hearing regarding apportionment of damages of the total settlement. Because a majority of the Court does not agree, Justice Levin joined in the affirmance of the Court of Appeals as essentially the correct result for the reasons stated above.

184 Mich App 771; 459 NW2d 103 (1990) affirmed in part and reversed in part.

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Angela J. Nicita*), for the plaintiff.

*Clark, Klein & Beaumont* (by *Michael V. Kell,*

*Thomas S. Nowinski,* and *Edward J. Hood)* for the intervening plaintiff.

Amici Curiae:

*David S. Zurvalec* for Michigan Manufacturers Association, Michigan Self-Insurers' Association, American Society of Employers, and Michigan Association of Insurance Companies.

BRICKLEY, J. In this case we are called upon to determine the extent to which an employer, or workers' compensation carrier, is entitled to seek reimbursement from a third-party tort recovery obtained as a result of the death of an employee. See MCL 418.827(5); MSA 17.237(827)(5). We would hold that an employer or workers' compensation carrier is entitled to seek reimbursement from the entire amount of the third-party tort recovery obtained as a result of the death of an employee regardless of the classification of the damages, i.e., economic or noneconomic, or whether the recipient of the proceeds was entitled to receive compensation benefits.

I

Bobby Eddington was employed by Milford Fabricating Company, a subsidiary of intervening plaintiff-appellee The Budd Company, as a machine repairman. On February 16, 1982, he was cleaning a press pit with a chemical solvent manufactured by defendant Eppert Oil Company that contained methylene chloride.[1] He died of asphyxiation as a result of the fumes emitted from the chemical solvent.

---

[1] The methylene chloride was produced by defendants Ashland Chemical, Inc., and Ashland Oil, Inc.

After Mr. Eddington's death, The Budd Company paid workers' compensation benefits to plaintiff, the decedent's surviving spouse. Plaintiff remarried one year later, and The Budd Company made payments to her on behalf of the decedent's three minor children.[2]

Plaintiff, as personal representative of her deceased husband's estate, brought a wrongful death action against the manufacturers and sellers of the chemical solvent that caused the death of Bobby Eddington.[3] The case was settled by consent judgments entered on October 21, 1986, one against Ashland Oil and Ashland Chemical, and the other against Eppert Oil. The consent judgment against Ashland Oil and Ashland Chemical provided that plaintiff was to receive a total of $2,500 immediately; the consent judgment against Eppert Oil provided that $461,494 was payable upon entry of the judgment and that, in addition, Eppert was to pay a structured settlement to the decedent's minor children.

The trial court entered an order for the distribution of the wrongful death proceeds on this same date. See MCL 600.2922(6); MSA 27A.2922(6). Pursuant to that order, $132,869.25 was allocated to plaintiff individually for her loss of society and companionship, and $49,482.18 was allocated to decedent's parents for their loss of society and companionship. Approximately $206,643 was allocated for attorney fees, costs, and reimbursement, and $75,000 was placed in escrow with plaintiff's counsel pending a determination of the amount of the workers' compensation lien that would attach to the wrongful death proceeds. The decedent's minor children each received an award of $333 per month until their nineteenth birthdays. There-

[2] MCL 418.335; MSA 17.237(335).

[3] MCL 600.2922; MSA 27A.2922.

after, monthly payments of between $944 and $1,019, depending on the age of each child at the time of the consent judgment, were to be made to the children for five years. These payments were intended to compensate the children for the loss of financial support and loss of society and companionship of their deceased father.

On December 19, 1986, The Budd Company was permitted by stipulation to intervene to assert its workers' compensation lien. The Budd Company filed a motion to determine the amount of the workers' compensation lien on May 19, 1987, in which it was asserted that its lien should attach to the entire settlement proceeds regardless of the damages that the proceeds were intended to compensate. The trial court held that The Budd Company was not entitled to enforce its lien on the settlement proceeds designated for loss of society and companionship damages, relying upon several Court of Appeals cases.[4] However, the court permitted the lien to attach to the entirety of those proceeds allocated to the decedent's children for loss of financial support including those to be received after they attain the age of eighteen.

Plaintiff appealed the trial court's holding, contending that The Budd Company was not entitled to assert a lien on the portion of the proceeds awarded to the children after they attained the age of eighteen because no compensation benefits were recoverable by the children after age eighteen. The Budd Company appealed the trial court's decision that loss of society and companionship damages are not subject to the employer's statutory lien. The Court of Appeals held that The

---

[4] See *Treadeau v Wausau Area Contractors, Inc,* 112 Mich App 130; 316 NW2d 231 (1982); *Logan v Edward C Levy Co,* 99 Mich App 356; 297 NW2d 664 (1980); *Lone v Esco Elevators, Inc,* 78 Mich App 97; 259 NW2d 869 (1977).

Budd Company's lien attaches to the entire third-party recovery of the children without regard to apportionment of damages and also to plaintiff's individual damages for loss of consortium[5] because she received compensation benefits directly from the employer.[6] 184 Mich App 771; 459 NW2d 103 (1990).

This Court granted leave to appeal on July 19, 1991. 437 Mich 1046.

## II

We must determine the extent to which the reimbursement provision of the Workers' Disability Compensation Act, MCL 418.827(5); MSA 17.237(827)(5), applies to the wrongful death recovery obtained by the plaintiff, as personal representative of Mr. Eddington's estate, and subsequently distributed to the several individuals involved in this case. To properly evaluate this issue, it is necessary to understand the manner in which the tort recovery was obtained and the interplay between the wrongful death act and the WDCA.

First, plaintiff, as personal representative of the

---

[5] It must be noted that the Court of Appeals characterized the claims as loss of consortium; however, the claims were brought under the wrongful death act, which describes loss of society and companionship of the deceased as damages to be compensated by that act. Although the damages received are for similar losses, a common-law loss of consortium claim is not necessarily treated the same as loss of society and companionship damages allocated in a wrongful death action. Because we are not presented with a common-law loss of consortium claim in this case, we do not opine regarding the effect of the employer's, or carrier's, compensation lien on such a recovery. We do not mean to imply that the analysis by Justice BOYLE regarding a loss of consortium cause of action is correct; rather, we do not address the question because loss of society and companionship are damages recoverable pursuant to the wrongful death act, which are predicated upon the death of the employee rather than personal injury, and are obtained through the actions of the decedent's personal representative.

[6] The loss of society and companionship damages allocated to Mr. Eddington's parents were not addressed by the Court of Appeals.

decedent's estate, is designated within the wrongful death act as the appropriate person to bring an action to enforce the liability of any tortfeasor contributing to the decedent's death. See MCL 600.2922(2); MSA 27A.2922(2). Any recovery obtained by the personal representative is to be received on behalf of all who are entitled to relief pursuant to the wrongful death act as provided by MCL 600.2922(3); MSA 27A.2922(3).

Secondly, an employer or compensation carrier is entitled to seek reimbursement from "[a]ny recovery against the third party for damages resulting from personal injuries or death" of an employee. MCL 418.827(5); MSA 17.237(827)(5). A reimbursement provision of this nature has been a part of the WDCA from the early stages of its enactment, even when the receipt of benefits had operated as an election of remedies by the injured employee. See 1915 CL 5468. The basic reimbursement provision has carried over into the current statutory framework and is the focus of the matter to be resolved in this case. The question then is whether the language of § 827(5) permits reimbursement by the employer from the entire wrongful death recovery, and, if not, what portions of the recovery are to be subject to that reimbursement provision.

III

Section 827(5) provides:

In an action to enforce the liability of a third party, the plaintiff may recover *any amount* which the employee or his dependents *or personal representative* would be entitled to recover in an action in tort. *Any recovery against the third party for damages resulting from* personal injuries or *death* only, after deducting expenses of recovery, *shall*

*first reimburse* the employer or carrier *for any amounts paid or payable* under this act to date of recovery *and* the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits. [*Id.* Emphasis added.]

We have previously indicated that the reimbursement section of the WDCA

"provides clearly and unambiguously that the employer or carrier is to be reimbursed from 'any recovery' against a third party for 'any amounts' paid or payable to the employee under the WDCA as of the date of the recovery. The statute speaks for itself; there is no room for judicial interpretation or construction." [*Downie v Kent Products, Inc,* 420 Mich 197, 216; 362 NW2d 605 (1984), quoting *Land v The George Schmidt Co,* 122 Mich App 167, 170; 333 NW2d 30 (1982).]

Today we would reaffirm our finding that the language of § 827(5) is clear and unambiguous, thereby removing any need to look beyond its ordinary meaning in giving it effect. See *Livonia v Dep't of Social Services,* 423 Mich 466; 378 NW2d 402 (1985); *Kalamazoo Ed Ass'n v Kalamazoo Public Schools,* 406 Mich 579; 281 NW2d 454 (1979).

IV

Plaintiff asserts that § 827(5) should be interpreted to provide reimbursement to the employer only to the extent that the third-party tort recovery duplicates damages compensable under the WDCA. On the basis of this argument, plaintiff contends that the loss of society and companionship damages and the loss of financial support

recovery by decedent's dependent children for the period after their eighteenth birthdays should not be subject to reimbursement under § 827(5) because such damages are not obtainable as compensation benefits under the WDCA.

A

The Court of Appeals rejected the argument that only those damages which are compensable under the WDCA are entitled to be sought as reimbursement under § 827(5). Reliance was placed upon *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485; 232 NW2d 154 (1975), for the proposition that reimbursement may be sought from a third-party tort recovery despite the damages not being the type of loss compensable under the WDCA. In *Pelkey,* we held that the entire third-party tort recovery was subject to the reimbursement provision, even though pain and suffering damages were part of the recovery and not compensable under the WDCA. In fact we made the following blanket statement regarding the application of § 827(5):

> The 1952 amendment permits the employee to seek both workmen's compensation and damages from a third party, but provides that *any third-party recovery* for damages resulting from personal injuries may be reached by the insurer. [*Id.* at 493. Emphasis added.]

We further expanded our holding in *Pelkey* that the entire recovery is subject to reimbursement despite a portion of the recovery being for damages not compensable pursuant to the WDCA:

> If he [the employee] is awarded damages, the employer or workers' compensation carrier is enti-

tled to reimbursement for benefits paid and to a credit against future payments, *without regard to whether the recovery is for the same elements of loss compensated by the benefits paid under the statute. [Great American Ins Co v Queen,* 410 Mich 73, 89; 300 NW2d 895 (1980). See also *Workman v DAIIE,* 404 Mich 477, 511; 274 NW2d 373 (1979). Emphasis added.]

Accordingly, the Court of Appeals correctly determined that the reimbursement provision of the WDCA applies to any third-party tort recovery obtained as a result of the compensable death of the employee without regard to whether such damages are compensable under the WDCA. That analysis is consistent with our decision in *Pelkey* and the line of cases following it. Today we would reaffirm that an employer or compensation carrier may seek reimbursement from the entirety of a third-party tort recovery resulting from the death of the employee even when a portion of that recovery includes damages not compensable under the WDCA.

### B

The panel in this case found that a loss of consortium claim[7] predicated upon the death of the employee, to the extent that there is *direct* payment of compensation benefits to the spouse, entitles the employer or compensation carrier to seek reimbursement regardless of whether "the third-party recovery is for the same element of loss compensated by the workers' compensation benefits." 184 Mich App 776. We do not agree with the Court of Appeals rationale that application of § 827(5) to a recovery for loss of society and com-

---

[7] As noted earlier, the Court of Appeals incorrectly characterized the loss of society and companionship damages allocated pursuant to the wrongful death act provision, MCL 600.2922(6); MSA 27A.2922(6), as a separate common-law loss of consortium claim. See n 5.

panionship by a spouse for the death of the employee should be predicated upon whether the spouse was a direct or indirect recipient of compensation benefits. Such an interpretation is not consistent with the literal language of § 827(5) and should not be incorporated into it.

The clear and unambiguous language of § 827(5) indicates that "any recovery" obtained from the third party shall first be subject to a claim of reimbursement by the employer or carrier before there is a distribution of the remaining balance to those listed, i.e., the employee, the dependents, or personal representative. There is no indication in § 827(5) that it is necessary to evaluate the eligibility of the tort-recovery recipient for compensation benefits before allowing the employer or compensation carrier to be reimbursed out of any recovery obtained. To place such a requirement upon the application of § 827(5) would essentially require this Court to rewrite the language of the provision, which we are not empowered to do.

It is asserted that the phrase "for any amounts paid or payable under this act" should restrict application of § 827(5) to instances in which compensation benefits were received. However, we would find that this phrase does not limit the application of § 827(5) to instances in which compensation benefits were directly provided to a particular individual; rather, it limits the amount of reimbursement that may be recouped by an employer from any third-party tort recovery obtained as a result of the death of the employee. As we stated in *Franges v General Motors Corp,* 404 Mich 590, 614-615; 274 NW2d 392 (1979):

> The employer or its insurance carrier may receive two interests in *any given third-party action.* First, there is the reimbursement interest: the

*refunding of monies previously paid or payable* as
workers' compensation benefits as of the date of
judgment. Additionally, a second interest appears
when the dollar amount of recovery exceeds the
insurer's reimbursement. [Emphasis added.]

In essence, the employer or carrier is limited to
recoupment of the amount paid as compensation
benefits and is merely entitled to any remaining
excess as a credit toward future compensation
benefits that may be owed. This is a logical limita-
tion to be placed upon the employer or compensa-
tion carrier because there should only be reim-
bursement for the amount expended up to the date
of recovery. Such an approach is consistent with
the early versions of the reimbursement provision.
We have consistently held that an employer or
compensation carrier is entitled to receive recoup-
ment only for the amount expended for benefits.
See *Grand Rapids v Crocker,* 219 Mich 178; 189
NW 221 (1922); *Albert A Albrecht Co v Whitehead
& Kales Iron Works,* 200 Mich 109; 166 NW 855
(1918). Thus, the Legislature incorporated that
limitation into § 827(5) along with the provision
that any excess recovery is to constitute a credit
toward future compensation obligations.

Section 827(5) provides that an employer or
compensation carrier is entitled to reimbursement
from *any recovery* obtained from a third party and
that that ability is only constrained by the limita-
tion that the reimbursement not exceed the total
amount of compensation benefits paid or payable
by the employer or compensation carrier to the
date of recovery for the death of the employee. To
interpret the statutory provision differently would
essentially render the analysis of *Pelkey,* and our
decisions following that opinion, meaningless.
Those cases predicated their rationales on the

basis that reimbursement is not limited to damages compensable under the WDCA.

C

The Court of Appeals in this case did not address whether § 827(5) should be held applicable to the loss of society and companionship damages obtained by Mr. Eddington's parents pursuant to the action for wrongful death. Nonetheless, plaintiff has sought to have this issue resolved and asserts that the Court of Appeals appears to subject such recoveries to reimbursement by the employer even though the decedent's parents are alleged to have received no compensation benefits either directly or indirectly from the employer. Although the Court of Appeals did not address this particular matter, for purposes of judicial economy and in the interest of clarifying this aspect of the WDCA, we address the question whether, in fact, the employer or compensation carrier may seek reimbursement from a loss of society and companionship recovery obtained by the parents of a deceased employee under the wrongful death act.

As discussed in subsection B, the Court of Appeals determined that, in determining whether a spouse's loss of society and companionship recovery, which the panel characterized as a loss of consortium claim, is exempt from § 827(5), a distinction was made between compensation benefits directly received from the employer or compensation carrier and those received indirectly. That approach would appear to apply with equal force to the parents' claim because they were neither direct nor indirect recipients of compensation benefits. However, as we stated in subsection B, that interpretation is contrary to the express language of § 827(5) and is not the proper evaluation to be adopted.

Section 827(5) clearly states that "[a]*ny recovery* against the third party for damages resulting from . . . death . . . , *shall first reimburse* the employer or carrier *for any amounts paid or payable* under this act . . . ." (Emphasis added.) Nothing in § 827(5) requires, as a condition precedent, that a third-party tort-recovery recipient receive compensation benefits. Furthermore, the express language of § 827(5) indicates that the employer or compensation carrier is entitled to reimbursement and the balance is then to be given to the employee, the employee's dependents, or the personal representative, depending upon the manner in which the third-party tort recovery was obtained. The decedent's parents received their recovery through the efforts of the personal representative, as provided in the wrongful death act; thus, the reimbursement to the employer or carrier appears to attach before the distribution of the proceeds to the personal representative and any subsequent distribution to those listed in MCL 600.2922(3); MSA 27A.2922(3). Such an analysis of § 827(5) permits each part of that provision to be internally consistent, unlike the approach adopted by the Court of Appeals. Thus, we should not attempt to rewrite the clear language of § 827(5) by requiring that it only apply in those instances where compensation benefits were available to the recipient of the third-party tort recovery obtained as a result of the compensable death of the employee.

The purpose of allowing third-party tort recoveries and immediate reimbursement of the employer was adequately summarized in *Franges:*

> Accordingly, we believe that one of the major purposes for the Legislature permitting actions by both the injured employee and the insurer is to

provide the opportunity for *full recovery by each*
and thereby place the liability for the injury and
the resulting cost upon the negligent party. [*Id.* at
613. Emphasis added.]

Thus, the Legislature quite probably determined
that it was necessary to permit the employer or
compensation carrier to be allowed recoupment
from *any recovery* in order to ensure complete
satisfaction to them. Accordingly, we would find
that *any third-party tort recovery for damages*
obtained as a result of the death of the employee
is available to the employer or compensation car-
rier for reimbursement to the extent compensation
benefits have been paid or are payable to the date
of recovery and are a credit for future compensa-
tion obligations.

V

Our reading of the language of § 827(5) leads to
the following analysis regarding application of
that provision. First, the Legislature has clearly
permitted a "plaintiff" to bring a third-party tort
action to recover any amount that the employee or
the employee's dependents or personal representa-
tive would be entitled to receive.[8] Second, any
recovery obtained as a result of the death of the
employee shall immediately be subject to applica-
tion of the reimbursement provision on behalf of
the employer or compensation carrier to the ex-
tent of any workers' compensation benefits paid or
payable to the date of the recovery. Third, any
balance of the third-party tort recovery remaining
after application of the reimbursement provision is

[8] The Legislature did not specify those who may be classified as
"plaintiffs" for the purpose of bringing a third-party tort action
because it is possible that the employer or compensation carrier or
other individuals may be the party bringing the action. See MCL
418.827(1), (3); MSA 17.237(827)(1), (3).

to be allocated to the "employee,"[9] or the employee's dependents or personal representative, depending upon the manner in which the recovery had been obtained. Finally, any excess amount allocated to those individuals after reimbursement is considered to be an advance payment of future compensation benefits that the employer or carrier may consider as a credit for such future payments. This is a straightforward reading of the language of § 827(5), giving each word within that provision its ordinary meaning.

## VI

Applying this analysis to the facts of the instant case, we would find that the employer, The Budd Company, is entitled to seek reimbursement from the entire tort recovery obtained by the personal representative because of the wrongful death of Mr. Eddington, to the extent that benefits had been paid or are payable by the employer to the date of recovery. Any balance of the wrongful death recovery remaining after application of this provision should be allocated to the personal representative for disposition of the proceeds to those entitled pursuant to the wrongful death act in accordance with the distribution ordered by the trial court. In addition, the balance that is allocated to the personal representative after the reimbursement should be treated as a credit toward future compensation obligations owed by The Budd Company under the WDCA.

We would remand the case to the trial court for further proceedings consistent with this opinion.

[9] Employee is given an expansive definition for purposes of § 827, including subsection 5; thus, it must be considered in the allocation of the balance of damages of the recovery remaining after reimbursement to the employer or compensation carrier. See MCL 418.131(2); MSA 17.237(131)(2).

RILEY and GRIFFIN, JJ., concurred with
BRICKLEY, J.

MALLETT, J. (*concurring in part and dissenting in part*). I concur in the result reached by the lead opinion that the third-party tort recoveries obtained by the spouse and children of a deceased employee in a wrongful death action are subject to the employer's reimbursement lien. However, I disagree that the reimbursement provision of § 827(5) also applies to the loss of society and companionship damages allocated to the nondependent parents of a deceased employee. Because I believe that application of the reimbursement provision of § 827(5) to a third-party tort recovery is dependent upon whether the recipient of the recovery is eligible for compensation benefits, I respectfully dissent from part IV(C) of the lead opinion that subjects those portions of third-party tort recoveries awarded to persons ineligible to receive compensation benefits to the employer's reimbursement lien.

The lead opinion asserts that the damages awarded to the decedent's parents for loss of society and companionship are subject to the employer's reimbursement lien because "[t]here is no indication in § 827(5) that it is necessary to evaluate the eligibility of the tort-recovery recipient for compensation benefits before allowing the employer or compensation carrier to be reimbursed out of any recovery obtained." *Ante,* p 212. I disagree.

Pursuant to § 827(5), the employer is entitled to reimbursement from any tort recovery, and any remaining excess is considered a credit toward future compensation benefits that may be owed. Thus, if The Budd Company is liable for continuing payments, no payments will have to be made

until the total amount due exceeds the amount of the advance payment credit. Without determining whether the recipient of damages from a wrongful death action or any third-party tort action is eligible to receive compensation benefits, the lead opinion would give the employer credit for a portion of the recovery not enjoyed by workers' compensation beneficiaries.*

For these reasons, I would hold that status of the claiming party dictates whether the employer's lien attaches for reimbursement of compensation benefits paid or payable under the act.

BOYLE, J. (*dissenting*). I write separately because I disagree that, in every third-party tort action arising out of the injury or death of an employee, either reimbursement is dependent upon the party's status as a workers' compensation beneficiary or the entire tort recovery is subject to the employer's lien without regard to whom and for what the damages are allocated. Because I believe the reimbursement provision of the Workers' Disability Compensation Act, MCL 418.827(5); MSA 17.237(827)(5), is not "clear and unambiguous" and that the nature of the recovery dictates whether the lien attaches, I would hold that damages allocated for loss of consortium may not be reached by the employer's lien for repayment of compensation benefits paid or payable under the act.

I

The Workers' Disability Compensation Act has not altered an employee's common-law right to proceed in tort against persons other than the employer or co-workers. An employee may pursue

---

* See the example set forth in Justice BOYLE's dissenting opinion, p 232, n 11.

his tort remedy and sue such persons for all losses normally recoverable in tort. If awarded damages, pursuant to MCL 418.827(5); MSA 17.237(827)(5), the employee must reimburse the employer for any amounts received under the compensation act, but need not repay more than he recovered in tort. Thus, the employee recovers under the more generous of the two systems, but not both. *Great American Ins Co v Queen,* 410 Mich 73, 89; 300 NW2d 895 (1980).

MCL 418.827(5); MSA 17.237(827)(5) provides:

> In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death *only,* after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits. [Emphasis added.]

While I agree that the employer is entitled to reimbursement from the employee's third-party tort recovery, I cannot concede that the language used in the statute is "clear and unambiguous" in subjecting the entire tort recovery to the employer's lien. First, the Legislature's amendment of the WDCA, 1972 PA 285, deleted introductory language from § 131, the definition and exclusive remedy section, but chose to leave intact similar introductory language in § 827(1).[1] Section 131(1), as amended in 1972, provided:

---

[1] 1972 PA 285 was passed as a direct response to *Ray v Transamer-*

The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer. As used in this section and section 827 "employee" includes the person injured, his personal representatives and any other person to whom a claim accrues by reason of the injury to or death of the employee, and "employer" includes his insurer, a service agent to a self-insured employer, and the accident fund insofar as they furnish, or fail to furnish, safety inspections or safety advisory services incident to providing workmen's compensation insurance or incident to a self-insured employer's liability servicing contract.[2]

The amendment deleted, "Where the conditions of liability under this act exist," preceding "the right" and "compensation" preceding benefits, and inserted "employee's" in the first sentence. Conversely, the Legislature left intact the introductory language in § 827, which provides:

Where the injury for which compensation is payable under this act was caused under circumstances creating legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof, the acceptance of compensation benefits or the taking of proceedings to enforce compensation pay-

---

*ica Ins Co*, 10 Mich App 55; 158 NW2d 786 (1968), lv den 381 Mich 766 (1968). In *Ray,* the Court concluded that, under the statute's definition of employer, a workers' compensation carrier is not immune from common-law tort liability for its own acts of negligence causing injury to the employee and that the compensation insurance carrier may be a third-party tortfeasor within the meaning of the act. The 1972 amendment expressly defined who was included under the labels of employer and employee for the purposes of immunity from tort liability in workers' compensation cases. Plant, *Workers' compensation, 1975 annual survey of Michigan law,* 22 Wayne L R 703, 747-749 (1976).

2 Section 131 was again amended by 1987 PA 28, which revised the section providing that an employer's intentional tort was exempt from tort immunity granted under the act.

ments shall not act as an election of remedies but
the injured employee or his dependents or per-
sonal representative may also proceed to enforce
the liability of the third party for damages in
accordance with the provisions of this section.

This language supports the argument that it is
the injury for which recovery is had that defines
the scope of the lien. Further evidence of a possi-
ble attempt to limit the scope of the lien can be
found in the language of § 827(5), which says,
"Any recovery against the third party for damages
resulting from personal injuries or death *only,*
after deducting expenses of recovery, shall first
reimburse the employer or carrier . . . ." The
limitation "personal injuries or death *only*" has
been part of the statute since it was passed, 1952
PA 155. The only certainty that can be gleaned
from the "plain and unambiguous" language of
the statute is that *"only"* damages recovered for
"personal injuries or death" are subject to the
employer's lien and, after reimbursement for bene-
fits already paid, that the balance of the recovery
for these specific damages must be paid to the
employee or the employee's dependents or per-
sonal representative and, later, serve as a credit
for any future compensation benefits the employer
may be required to pay. By using the modifying
word "only" and leaving intact introductory lan-
guage that limits liability to conditions under the
act, the Legislature arguably intended to identify a
class of cases outside the statute's operation and to
limit the type of damages subject to the employer's
lien as something less than the entire tort recov-
ery. Certainly, if the Legislature had intended the
scope of the employer's lien to be unlimited, it
could have done so easily and explicitly. For exam-
ple, the Federal Employees' Compensation Act
(FECA) provides that the employee "shall refund to

the United States the amount of compensation
paid by the United States . . . ." 5 USC 8132. The
Florida apportionment statute, Fla Stat Ann
440.39(3)(a) provides:

> [T]he employer or carrier shall recover from the
> judgment or settlement, after costs and attorney's
> fees incurred by the employee or dependent in
> that suit have been deducted, 100 percent of what
> it has paid and future benefits to be paid, except, if
> the employee or dependent can demonstrate to the
> court that he did not recover the full value of
> damages sustained . . . . The burden of proof will
> be upon the employee.

Statutes of other states specify the exact per-
centage of an employee's recovery that is exempt
from a compensation lien. New York gives the
employee the entire excess over the employer's
compensation outlay if the employee is the plain-
tiff, but only two-thirds if the employer or its
carrier is the plaintiff. See, generally, 2A Larson,
Workmen's Compensation Law, § 74.31, p 14-445.
By utilizing language such as the "entire recov-
ery" without regard to apportionment or by speci-
fying a percentage of the recovery to which the
lien may or may not attach, the Legislature
clearly could have indicated the scope of the work-
ers' compensation lien.

Because the language of the statute is ambigu-
ous and the actual intent of the Legislature un-
clear, I would hold that loss of consortium, which
is a separate cause of action, is not subject to the
employer's lien.

II

The prevailing rule in the United States is that
the employee's third-party recovery is not beyond

the reach of the employer's compensation reimbursement lien, even though some or all of it was accounted for by damages for pain and suffering. Larson, *supra,* § 74.35, p 14-541. For example, in *United States v Lorenzetti,* 467 US 167; 104 S Ct 2284; 81 L Ed 2d 134 (1984), the United States Supreme Court resolved the issue whether the Federal Employees' Compensation Act authorized reimbursement to the government of the entire tort recovery of the employee, even though the settlement represented compensation for pain and noneconomic loss alone. Section 8132 of the act[3] provides in part:

> If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury.[4]

---

[3] 5 USC 8101 *et seq.*

[4] Section 8132 further provides:

> No court, insurer, attorney, or other person shall pay or distribute to the beneficiary or his designee the proceeds of such suit or settlement without first satisfying or assuring satisfaction of the interest of the United States. The amount refunded to the United States shall be credited to the Employees' Compensation Fund. If compensation has not been paid to the beneficiary he shall credit the money or property on compensation payable to him by the United States for the same injury. However, the beneficiary is entitled to retain, as a minimum, at least one-fifth of the net amount of the money or other property remaining after the expenses of a suit or settlement have been deducted; and in addition to this minimum and

Emphasizing the precise language of the FECA, the Court held that whenever a federal employee suffered injury or death compensable under the statute, which creates "legal liability in a person other than the United States to pay damages," and the employee or his beneficiaries receive "money or other property in satisfaction of that liability," they "shall refund to the United States the amount of compensation paid by the United States . . . ." Finding little room for confusion, the Court held that the statute imposed two conditions precedent to an employee's obligation to refund the amount of compensation paid. First, the employee must have suffered an injury or death under circumstances creating a legal liability in a third party. Second, the employee or his beneficiaries must have received money or other property in satisfaction of that liability. Finding both conditions present, the Court ordered the reimbursement, determining that the FECA expressly creates a general right to reimbursement without regard to whether the employee's third-party recovery includes losses excluded under the FECA's coverage. *Lorenzetti* at 173-174.

We followed this general rule of reimbursement in *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485; 232 NW2d 154 (1975), finding that a tort recovery by an injured employee allocated for pain and suffering was subject to the reimbursement provision of the workers' compensation act. The employee received benefits in the amount of $3,364.60 for her injuries. In a $10,000 joint settle-

at the time of distribution, an amount equivalent to a reasonable attorney's fee proportionate to the refund to the United States.

ment of their claim against the third-party tortfeasor, the employee, the spouse, and the workers' compensation carrier allocated the damages as $3,364.60 to the insurer for reimbursement of workers' compensation benefits paid, $3,000 to the spouse for loss of consortium, and the balance of $3,635.40 to the employee for pain and suffering. Later, when the employee required further treatment related to the original compensable injury, the Workers' Compensation Appeal Board ruled that the employer was entitled to a credit from the employee's pain and suffering damages, less the cost of securing that recovery. We affirmed the ruling *without* addressing the damages allocated to loss of consortium:

> Damages for lost income, medical expenses, disfigurement, and pain and suffering have traditionally been thought of as damages resulting from personal injury. In 22 Am Jur 2d, Damages, § 86 at 124 we read:
> "In the case of a personal injury by reason of the tortious conduct of the defendant, the damages of the person injured fall into two general categories. Because of the injury, plaintiff has lost income which he otherwise would have received (for example, wages, profits, commissions, etc.), and certain damage has been thrust upon him which he otherwise would not have had (for example, medical expenses, pain and suffering, etc.). It is for these elements that the law grants recovery under the heading of damages in personal injury cases."[5]

---

[5] The current edition is similar and reads:

The most common factors to be considered in determining the amount of damages for a personal injury are loss of earnings or earning capacity, medical expenses, pain and suffering, and any permanent effects of the injuries sustained. Loss of enjoyment of life and the shortening of the plaintiff's life expectancy are also important factors in any case where they apply. [22 Am Jur 2d, Damages, § 139, p 133.]

From the foregoing we conclude that, when the Legislature stated that damages recovered by an employee from a third-party tortfeasor for "personal injuries or death only" could be reached by an insurer, the Legislature meant to include damages resulting from pain and suffering. [*Id.* at 491-492.]

Five years later, in *Great American Ins Co v Queen, supra,* we held that the workers' compensation carrier was not entitled to reimbursement from no-fault benefits for noneconomic and excess economic loss. Thus, although neither *Pelkey* nor *Queen* dealt with the subject of loss of consortium, *Queen* stands as a recognition by this Court that a lien should not be imposed where there is no duplicate recovery.

We have not been previously presented with the question whether damages allocated for loss of consortium are subject to a workers' compensation reimbursement lien pursuant to MCL 418.827(5); MSA 17.237(827)(5). We have specifically recognized, however, that a claim for loss of consortium is not an item of damages, but a separate cause of action, derivative only in the sense that it does not arise at all unless another party has sustained some legally cognizable harm. *Eide v Kelsey-Hayes Co,* 431 Mich 26; 427 NW2d 488 (1988). As Justice TALBOT SMITH, writing for the majority in *Montgomery v Stephan,* 359 Mich 33, 43-44; 101 NW2d 227 (1960), persuasively described the nature of the claim:

The fact of the matter is that the effort to break down consortium into its component parts is no more than a theoretician's boast, the modern counterpart to the medieval resolution of the number of angels able to dance on the head of a pin. It requires a wisdom, and an effrontery, far greater

than ours to make differentiations so subtle, if, indeed, they are within the realm of human competence.

\* \* \*

It is law well-established, not even worth a counter struggle, that the gist of such actions is not the loss of services but the loss of conjugal rights. . . . The fact of the matter is that there is no predominant element in the concept of consortium, that consortium is not capable of subdivision, and that it is not necessary that there be an allegation of the loss of any particular "element" thereof.[6]

Several Court of Appeal panels have addressed the question and expressly held that loss of consortium damages are not subject to the employer's right to reimbursement. For example, in *Manninen v Warner & Swasey Co,* 80 Mich App 253; 263 NW2d 341 (1977), the Court held that the interest and proportionate share of a tort recovery by the spouse of an injured employee is not subject to the reimbursement lien of the employer. Similarly, in

---

[6] The wrongful death act, MCL 600.2922(6); MSA 27A.2922(6), was amended by 1971 PA 65 to expressly provide for loss of consortium damages in direct response to this Court's decision to the contrary in *Breckon v Franklin Fuel Co,* 383 Mich 251; 174 NW2d 836 (1970). However, as we noted in *Smith v Detroit,* 388 Mich 637; 202 NW2d 300 (1972), loss of consortium damages as an element of recovery in a wrongful death action can be traced back to this Court's decision in *Wycko v Gnodtke,* 361 Mich 331; 105 NW2d 118 (1960). In *Wycko,* Justice TALBOT SMITH, writing for the majority, recognized that damages for loss of consortium could be obtained under the wrongful death act. He found:

> [A]n individual member of a family has a value to others as part of a functioning social and economic unit. This value is the value of mutual society and protection, in a word, companionship. The human companionship thus afforded has a definite, substantial, and ascertainable pecuniary value and its loss forms a part of the "value" of the life we seek to ascertain. We are, it will be noted, restricting the losses to pecuniary losses, the actual money value of the life of the child, not the sorrow and anguish caused by its death. [*Id.* at 339-340.]

*Lone v Esco Elevators, Inc,* 78 Mich App 97; 259 NW2d 869 (1977), after careful consideration and analysis, the panel found loss of consortium damages recovered by the injured employee's wife were not recovery for damages resulting from "personal injuries or death only."

In *Logan v Edward C Levy Co,* 99 Mich App 356; 297 NW2d 664 (1980), the Court held that where an employee was killed in the course of employment, reimbursement under § 827 could be made only from that part of the judgment reflecting economic loss, and not from that portion that was for noneconomic changes such as the spouse's recovery for "loss of love, companionship and affection." *Id.* at 361 (opinion of RILEY, J.). Finally, in *Treadeau v Wausau Area Contractors, Inc,* 112 Mich App 130; 316 NW2d 231 (1982), relying on *Lone* and *Manninen,* the Court held that portion of recovery allocated to the injured worker's wife for loss of consortium was exempt from the employer's compensation reimbursement lien.[7] In so holding, the Court of Appeals joined a number of other jurisdictions that have confronted the problem of defining the scope of an employer's reimbursement lien under applicable state statutes and its relationship to loss of consortium damages recovered in third-party tort actions.[8]

In *Kottka v PPG Industries, Inc,* 130 Wis 2d 499; 388 NW2d 160 (1986), an employee injury and

[7] See also *Fritsch v Magnaflux Corp,* 150 Mich App 573; 389 NW2d 94 (1986), and Sylvester, *Workers' disability compensation, 1978 annual survey of Michigan law,* 25 Wayne L R 770, 791 (1979).

[8] See *Brocker Mfg & Supply Co v Mashburn,* 17 Md App 327; 301 A2d 501 (1973) (the employer was not entitled to any portion of the wife's recovery for loss of consortium when her employee-husband was injured in the course of employment); *Rascop v Nationwide Carriers,* 281 NW2d 170, 173 (Minn, 1979) (loss of consortium damages recovered by an injured employee's spouse are exempt from workers' compensation liens because such damages are not cognizable under the state's compensation act).

subsequent death case, the Wisconsin Supreme Court recognized that the purpose of third-party tort action provisions in workers' compensation acts is twofold: to preserve a right of action against the tortfeasor when a compensable injury results from the tortious act because the compensation system was not designed to extend immunity to strangers to the worker-employer relationship, and to avoid double recovery by a claimant. Finding that recovery for pain and suffering was subject to the lien but that the loss of consortium damages were not, the court construed the compensation act to permit "all parties with an interest in employe tort claims related to workplace injury or death to prosecute these claims against third parties and to share in the proceeds, but . . . not [to] permit employers or their insurers to invade claims which belong to the employe only." *Id.* at 514. The court distinguished the spouse's common-law claim for loss of consortium established during the period of her husband's injury from that related to his death. However, presented only with the question of loss of consortium related to the injury, the court determined that the claim was personal and apart from any claim of the injured employee himself.

> The claim for a loss of consortium is derivative, in the sense that it does not arise unless the other spouse has sustained a personal injury. . . . However, the claim is not for the other spouse's personal injury but for the separate and independent loss which the noninjured spouse sustains . . . . [The wife's] claim for loss of consortium is, therefore, a claim for personal injury to her, not a claim "for the injury or death of an employee" within the meaning of [the act]. [*Id.* at 521-522.][9]

---

[9] See also *Dearing v Perry*, 499 NE2d 268 (Ind App, 1986) (holding that although loss of consortium is a derivative action, it is separate

Thus, since 1977, our Court of Appeals has held that an employer's lien pursuant to § 827(5) for repayment of workers' compensation benefits paid cannot attach to a recovery allocated for loss of consortium damages.[10] Such a claim is personal and separate from that of the injured employee or his estate. While certainly not dispositive, where the judiciary has interpreted a statute, the absence of reaction from the Legislature in the form of statutory revision is some evidence of legislative acquiescence in the interpretation. *Breckon v Franklin Fuel Co,* 383 Mich 251, 295; 174 NW2d 836 (1970). The inference of acquiescence is strengthened where, as here, the Legislature has consistently amended the statutory scheme, but has not rejected the judicial interpretation of the reimbursement provision.

## III

Finally, I am sensitive to the defendant's argument that subjecting less than the total tort recovery to the employer's compensation lien predisposes the employer to possible collusion between the employee and the third-party tortfeasor to evade the lien by apportioning the recovery in an arbitrary manner. However, although the issue

and independent from the primary action and therefore exempt from the employer's compensation lien), and *Page v Hibbard,* 119 Ill 2d 41; 518 NE2d 69 (1988) (holding that loss of consortium is not a derivative claim brought by the spouse as the personal representative of the employee, but as an independent action to recover for injuries the spouse has suffered).

[10] The Court of Appeals has wavered on its previous decision only recently. In *Hearns v Ujkaj,* 180 Mich App 363; 446 NW2d 657 (1989), the Court held that only when the employee was injured rather than killed were the spouse's loss of consortium damages excluded from the employer's reimbursement lien. It reasoned that, unlike an injury situation, a spouse who received death benefits was now a direct recipient of workers' compensation benefits and no longer a stranger to the claim and, therefore, subject to the lien. *Id.* at 371.

is not presented here, it has been observed that "arbitrary allocation should be given no effect. Only where the issue is fully and fairly tried before an impartial fact finder or where the insurance carrier is invited to participate in settlement negotiations will such an allocation be given legal effect as to portions subject to the carrier's lien." *Dearing v Perry,* 499 NE2d 268, 272 (Ind App, 1986). In any event, forestalling the possibility of collusion as well as the permissible scope of the lien are issues that the Legislature may address.

For these reasons, I would hold that the nature of the recovery in a third-party tort action dictates whether the employer's lien will attach for reimbursement of compensation benefits paid or payable under the act. Irrespective of whether the claiming party is, or is not, a workers' compensation beneficiary, recovery for loss of consortium is not subject to an employer's reimbursement lien.

The interpretation of the reimbursement statute in the lead opinion, when played out to its logical conclusion, actually serves as a penalty for a workers' compensation beneficiary who recovers in a third-party tort action.[11] I respectfully dissent.

CAVANAGH, C.J., concurred with BOYLE, J.

LEVIN, J. (*separate opinion*). The question presented is whether $75,000 allocated to Charlotte

---

[11] The formulation clearly advantages the employer and penalizes the workers' compensation beneficiary for having recovered damages in a tort action. Because, after reimbursement, the entire balance also must serve as a credit against future compensation benefits, the employer may receive a windfall credit. For example, if a balance of $200,000 is distributed as $150,000 to the decedent's dependents and $50,000 to the decedent's parents, the employer still receives credit for the entire $200,000. Thereafter, if the dependents are eligible for $200,000 in future benefits, the employer pays nothing because the employer has received a credit for the full $200,000. The decedent's dependents would be in a better position, then, if they claim only workers' compensation and do not bring a third-party tort action.

Eddington, nominally for loss of society and companionship, being held in escrow, is subject to the employer's workers' compensation lien provided in § 827(5) of the Workers' Disability Compensation Act.

When the language now set forth in § 827(5) was first enacted by 1952 PA 155, damages in a wrongful death action did not include recovery for loss of society and companionship. Until the enactment of 1971 PA 65, providing that the damages in a wrongful death action "may also include recovery for the loss of the society and companionship of the deceased," recovery was limited to "such damages, as, the court or jury, shall deem fair and just, with reference to the *pecuniary injury* resulting from such death," 1948 CL 691.582, which did not include losses that result from the deprivation of society and companionship. *Breckon v Franklin Fuel Co,* 383 Mich 251; 174 NW2d 836 (1970).[1]

There is no reason to suppose that the Legislature, in enacting 1952 PA 155, contemplated that

---

[1] The Legislature responded to *Breckon* by enacting 1971 PA 65 to permit recovery for loss of society and companionship. In *Smith v Detroit,* 388 Mich 637; 202 NW2d 300 (1972), a new voting majority, Justices WILLIAMS and SWAINSON, joined Justices T. M. KAVANAGH and ADAMS in adopting Justice ADAMS' dissenting opinion in *Breckon,* and stated:

> [W]e hold that loss of companionship is an element of pecuniary damages under the wrongful death act and that *Breckon* is overruled. [*Id.* at 651.]

The Court said "our decision and its application is limited to cases commenced before March 30, 1972," *id.* at 649, the effective date of 1971 PA 65. Thus ended the long and bitter dispute between Justices BLACK and ADAMS, after the Legislature had amended the wrongful death act. I would read *Smith* as simply making 1971 PA 65 retroactive, which the Court could readily have done as a matter of construction, without gratuitously overruling *Breckon* under the circumstance that 1971 PA 65 did not specify an effective date.

*Wycko v Gnodtke,* 361 Mich 331; 105 NW2d 118 (1960), primarily relied on by Justice ADAMS, was decided in 1960 after the enactment of 1952 PA 155.

the wrongful death recovery by a deceased worker's personal representative would include damages for loss of society and companionship. Nor is there any reason to suppose that in reenacting the very same language in the Workers' Disability Compensation Act, 1969 PA 317, § 827(5), two years before the enactment of 1971 PA 65, that the Legislature contemplated that a wrongful death recovery by a deceased worker's personal representative would include damages for loss of society and companionship.[2]

I therefore conclude that the Legislature, when it enacted 1952 PA 155 and 1969 PA 317, in speaking of "[a]ny recovery against the third party for damages resulting from personal injuries or death," meant, in the context of an action for wrongful death, damages awarded for "pecuniary injury"—the only damages that could then be awarded—and not damages awarded for loss of society and companionship, which then could not be awarded, and, therefore, the employer's lien does not cover so much of a wrongful death recovery as is in respect to the loss of the society and companionship of the deceased.

Although the $75,000 being held in escrow is specifically designated for loss of society and companionship, it is clear that this designation was designed to avoid the employer's lien.

The value of the recovery exceeded $600,000. The employer paid approximately $75,000 to Charlotte Eddington for her support and the support of her children between the date of death, February 16, 1982, and the approval of the settlement in the fall of 1988. Clearly, a substantial portion of the settlement, possibly as much as $75,000, should have been allocated to the pecuni-

---

[2] 1972 PA 285 added subsection 8 to § 827; there was no change in the other provisions of § 827.

ary injury suffered by Charlotte Eddington and her children resulting from loss of support between the date of death and the date of the settlement.

I would remand to the Court of Appeals to consider the employer's alternative request that this action be remanded to the trial court for an evidentiary hearing on the apportionment of damages in regard to the total settlement.[3] A majority of the Court not agreeing thereto, I join in the affirmance of the Court of Appeals because that result is essentially correct for the reasons stated in the preceding paragraph.

---

[3] The allocation was pursuant to a settlement in which the employer did not participate.