LONE v ESCO ELEVATORS, INC.

1. WORKMEN'S COMPENSATION—THIRD-PARTY ACTION—DAMAGES—EM-
PLOYERS AND INSURERS—REIMBURSEMENT OF BENEFITS PAID—
EMPLOYEE'S WIFE—LOSS OF CONSORTIUM.

Payment of worker's compensation benefits by an employer or its
insurer to an injured employee where the employee and his
wife obtain a tort judgment from a third-party tortfeasor does
not authorize a claim of reimbursement or an advance payment
credit for possible future liability or disability payments from
that portion of the judgment which compensates the injured
employee's wife for loss of consortium (MCLA 418.827; MSA
17.237[827]).

2. WORKMEN'S COMPENSATION—THIRD-PARTY ACTION—APPORTION-
MENT OF DAMAGES—ADVANCE PAYMENT CREDIT.

There is no statutory requirement that the employer or its
insurer pay a percentage of the tort-suit attorney fees in
recognition of the advance payment credit where there has
been a successful tort action against a third-party tortfeasor by
an injured employee wherein a portion of the judgment is
treated as an advance payment credit against possible future
liability for worker's compensation because there was no fixed
liability at the time of the judgment, and under the statute, fee
payment is limited to reimbursement for disability benefits
already paid (MCLA 418.827[6]; MSA 17.237[827][6]).

Appeal from Ingham, Ray C. Hotchkiss, J. Sub-
mitted June 13, 1977, at Lansing. (Docket No.
29624.) Decided September 7, 1977.

Complaint by Walter M. Lone and Marnee L.
Lone against Esco Elevators, Inc., and Yellow
Freight Systems, Inc., seeking damages in tort for

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Workmen's Compensation §§ 61, 77.
   82 Am Jur 2d, Workmen's Compensation § 423.
[2] 82 Am Jur 2d, Workmen's Compensation § 437.

injuries sustained by Walter M. Lone during the course of his employment and for loss of consortium. Employers Commercial Union Insurance Company was allowed to intervene in the action to seek reimbursement for worker's compensation benefits paid to Walter M. Lone as a result of the injuries which gave rise to the tort action. Reimbursement was ordered from the judgment granted to Walter M. Lone but not from Marnee L. Lone's portion for loss of consortium. Employers Insurance was further required to pay a percentage of plaintiff Walter M. Lone's attorney fees and court costs resulting from the tort action. Employers Insurance appeals. Affirmed in part, reversed in part and remanded.

*O'Brien & Noud,* for plaintiff.

*Ripple & Chambers, P. C.,* for Employers Commercial Union Insurance Company.

Before: D. E. HOLBROOK, JR., P. J., and ALLEN and D. R. FREEMAN,* JJ.

ALLEN, J. This appeal[1] presents two difficult questions of first impression of worker's compensation law.

(1) When an employer or its insurer pays worker's compensation benefits to an injured employee and the employee and his wife obtain a tort judgment from a third-party tortfeasor, does MCLA 418.827; MSA 17.237(827) authorize the employer to claim reimbursement or an advance payment credit from that portion of the judgment which

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The appeal is taken from judgment orders entered on June 7, 1976, and July 9, 1976, by Ingham County Circuit Judge Ray C. Hotchkiss.

compensates the injured employee's wife for loss of consortium?

(2) When an injured employee successfully pursues a tort action against the third-party tortfeasor, and a portion of the judgment is treated as an advance payment credit against future worker's compensation liability, is the employer required to pay a percentage of the employee's attorney fees in recognition of the advance payment credit?

### Facts

Plaintiff-appellee, Walter Lone, suffered an injury on June 30, 1972, while working for the Lardner Elevator Company of Detroit. Intervening plaintiff-appellant, Employers Commercial Union Insurance Company, (ECU) is Lardner's worker's compensation insurance carrier. From the date of the injury through August of 1975, ECU voluntarily paid compensation benefits totaling $25,867.13. Mr. Lone's rights to further worker's compensation are now being determined in contested proceedings before the Workmen's Compensation Bureau.

On November 28, 1973, Mr. Lone and his wife, plaintiff-appellee Marnee Lone, filed a tort suit against defendants Esco Elevators and Yellow Freight System, alleging that those parties had tortiously caused the injury for which Mr. Lone was then receiving worker's compensation benefits. Mr. Lone's complaint sought damages for his injuries, loss of wages and pain and suffering. Mrs. Lone asked damages for loss of consortium. Neither individual could have sued Mr. Lone's employer, Lardner Elevator Company, because worker's compensation is the employee's exclusive remedy against his employer and the employer's insurance company. MCLA 418.131; MSA 17.237(131).

That statute has also been interpreted as barring a loss of consortium suit by an employee's spouse against the employer. *Haddad v Justice,* 64 Mich App 74; 235 NW2d 159 (1975), *Balcer v Leonard Refineries, Inc,* 370 Mich 531; 122 NW2d 805 (1963). But the suit against the two named defendants was authorized by MCLA 418.827(1); MSA 17.237(827)(1):

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof * * * the injured employee or his dependents or personal representative may also proceed to enforce the liability of the third party for damages * * * ."

The initial phase of the lawsuit ended with a settlement judgment entered on June 7, 1976. That settlement provided that Walter Lone would receive $65,000 from the defendants, and Marnee Lone would receive $60,000. At that point, ECU intervened to assert its rights under MCLA 418.827(5); MSA 17.237(827)(5):

"Any recovery against the third party *for damages resulting from personal injuries or death only,* after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits." (Emphasis added.)

Before ECU could claim its share of the judgment, it was required to pay a percentage of the

attorney fees charged by the Lones' attorney and a percentage of the court costs.[2]

"Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting recovery. * * * Expenses of recovery shall be apportioned by the court between the parties *as their interests appear at the time of the recovery.*" (Emphasis added.) MCLA 418.827(6); MSA 17.237(827)(6).

The issues presented on appeal are completely framed by the quoted subsections (5) and (6) of MCLA 418.827; MSA 17.237(827) and the data in footnote 2, *supra.* The Lones' position—which was adopted by the trial judge—is that ECU has no claim to any of Mrs. Lone's $60,000 settlement judgment. The trial court held that Mr. Lone's $65,000 judgment should be divided as follows:

| | |
|---|---|
| 65,000 | (Mr. Lone's 52% share of the total judgment) |
| − 26,000 | (40% contingent fee to Mr. Lone's attorney) |
| 39,000 | |
| −    628.53 | (52% share of total litigation costs) |
| 38,371.47 | |
| − 25,867.13 | (Reimbursement to ECU for benefits already paid) |
| 12,504.34 | (Advance payment credit for future compensation liability) |

On appeal, ECU first argues that the preceding distribution was incorrect because Mrs. Lone's $60,000 share of the judgment should also be subject to a lien for past and future compensation payments. If that approach is used, the breakdown would appear as follows:

---

[2] The judgment totaled $125,000; $65,000 for Mr. Lone and $60,000 for Mrs. Lone. Their attorney was working under a 40% contingent fee agreement. The total court costs were $1,208.72. ECU had previously voluntarily paid compensation benefits totaling $25,867.13.

```
  125,000      (Total judgment)
–  50,000      (40% contingent attorney fee)
   75,000
–   1,208.72   (Total litigation costs)
   73,791.28
–  25,867.13   (Reimbursement to ECU for bene-
               fits already paid)
   47,924.15   (Advance payment credit for fu-
               ture compensation liability)
```

Mr. Lone's judgment alone is large enough to fully reimburse ECU for the worker's compensation benefits which have already been paid. The difference between the two methods is the amount of advance payment credit awarded to ECU. If the proceedings currently pending in the Workmen's Compensation Bureau lead to a finding that Mr. Lone is still disabled and ECU is liable for continuing payments, no payments will actually have to be made until the total amount due exceeds the amount of the advance payment credit awarded in this action. This summarizes the first issue raised on appeal.

Since ECU benefits from the tort recovery, the statutes require that it reimburse Mr. Lone (or both Lones) for a portion of their attorney fees and litigation expenses. The percentage of fees and expenses which ECU must pay is determined from a fraction whose numerator is ECU's interest "at the time of the recovery" (MCLA 418.827[6]; MSA 17.237[827] [6]) and whose denominator is the amount of the judgment subject to ECU's lien (either $65,000 or $125,000). The crucial question is what the statute means when it says "interest at the time of the recovery". ECU contends that its interest is a $25,867.13 refund which it will receive for benefits already paid. On the other hand, the Lones argue—and the trial judge agreed

—that ECU's "interest at the time of the recovery" is the total of the reimbursement and the advance payment credit. That ruling led to the following calculation:

        25,867.13  (Reimbursement to ECU for past
                    benefits paid)
    +  12,504.34   (Advance payment credit for future
    _____     compensation liability)
        37,371.47  (ECU's "interest at the time of the
                    recovery")

Since ECU had a 59.03% interest in Mr. Lone's $65,000 judgment, it was required to pay 59.03% of his attorney fees and litigation costs. This charge was assessed against ECU's reimbursement for past benefits paid as follows:

        25,867.13  (Reimbursement to ECU for past
                    benefits paid)
    -  15,718.50   (59.03% of $26,000 attorney fee and
    _____     $628.53 costs)
        10,148.63  (Amount actually paid to ECU as
                    full reimbursement for past benefits
                    paid)

ECU argues on appeal that its "interest at the time of the judgment" was limited to the $25,867.13 which it had already paid in benefits. If that figure is adopted, ECU would be responsible for only 39.79% of Mr. Lone's attorney fee and litigation costs. This interpretation would increase the amount actually refunded to ECU without diminishing the amount of its advance payment credit in the event that it becomes liable for future compensation benefits.[3] This summarizes the second issue on appeal.

---

[3] There are several possible permutations of this analysis, depending upon how we resolve questions (1) and (2). For example, if the entire $125,000 judgment is subject to ECU's lien, and ECU must pay an attorney fee for its advance payment credit, then the amount of that fee will more than consume the $25,867.13 reimbursement for past benefits.

As mentioned, the trial judge adopted the Lones' argument on both issues. We now consider the correctness of those rulings.

I. *Is ECU entitled to any part of the proceeds from Mrs. Lone's judgment for loss of consortium?*

MCLA 418.827(5); MSA 17.237(827)(5) defines the problem:

> "*Any recovery* against the third party *for damages resulting from personal injuries or death only,* after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance * * * shall be treated as an advance payment by the employer on account of any future payment of compensation benefits."

We must decide whether Mrs. Lone's judgment is "any recovery for damages resulting from personal injuries or death" as that phrase is used in the preceding quotation. We hold that Mrs. Lone's judgment is not subject to ECU's lien.

There is no authority directly on point in Michigan, although several cases have touched upon similar questions. In *Hix v Besser Co,* 19 Mich App 468; 172 NW2d 821 (1969), *aff'd in part, vacated in part,* 386 Mich 499; 194 NW2d 333 (1972), this Court held that the worker's compensation insurance carrier was entitled to a lien on a wrongful death judgment obtained by the widow of an injured employee even though the judgment expressly stated that none of the recovery was for damages covered by worker's compensation. On

appeal, the Supreme Court reversed that result without commenting on this Court's analysis. *Hix v Besser Co,* 386 Mich 499; 194 NW2d 333 (1972). The Supreme Court held that the carrier had waived all its claims by entering into a separate settlement agreement with the third party tortfeasor. The Supreme Court's opinion in *Hix* undermines the precedential value of this Court's *Hix* opinion. It should also be noted that in *Hix* the employee died; thus his widow, the plaintiff in the tort action, was a direct recipient of worker's compensation benefits. The situation is different in the present case where Mr. Lone was injured and disabled, not killed. Here, the amount of the benefits have been increased because Mrs. Lone is conclusively presumed dependent on Mr. Lone; but she is not a direct recipient of benefits.

We also find some guidance in the more recent decision of *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485; 232 NW2d 154 (1975). The specific issue addressed there was whether the compensation carrier was entitled to a lien on that part of the employee's tort judgment which was specifically designated as damages for pain and suffering. The Court held that pain and suffering damages are included in damages for "personal injuries or death only". MCLA 418.827(5); MSA 17.237(827)(5). Without more, that holding would suggest by analogy that the damages for loss of consortium in the present case should also be subject to the carrier's lien. However, the tort action in *Pelkey* also resulted in a recovery for loss of consortium by the employee's spouse. While the carrier successfully sued to enforce its lien on the pain and suffering damages, it apparently made no effort to reach the spouse's recovery for loss of consortium. The ma-

jority opinion makes no comment on the possibility of also reaching that portion of the judgment.[4]

Justice WILLIAMS dissented in *Pelkey.* He argued that pain and suffering damages should not be available as reimbursement to the carrier since worker's compensation benefits do not include anything for pain and suffering. His opinion also gratuitously addresses the loss of consortium question and states that, for similar reasons, the carrier has no claim on a loss of consortium judgment recovered by an employee's spouse. As authority on the consortium question, Justice WILLIAMS cites *Ginther v Petrolane Gas Service, Inc,* 1972 WCABO 2527, a case in which the Appeal Board allowed a lien on pain and suffering damages but not against the spouse's separate settlement for loss of consortium.

In *Hakkinen v Northern Advertising Co,* 38 Mich App 506; 196 NW2d 863 (1972), the employee and his wife settled their tort action in a settlement agreement which did not segregate damage elements. In later proceedings before the Workmen's Compensation Bureau, the employer was awarded reimbursement and advance payment credits against the entire judgment. On appeal to this Court, the employee argued that the portion of the judgment which compensated his wife for loss of consortium should not have been available for the advance payment credit. This Court did not decide the question, finding instead that the settlement agreement had not segregated the damage elements and the Workmen's Compensation Bureau had no power to do so. Since the appeal in *Hakkinen,* was from the bureau, this Court could

[4] *See also Kroll v Hyster Co,* 398 Mich 281; 247 NW2d 561 (1976), and *Schalk v Michigan Sewer Construction Co,* 62 Mich App 658; 233 NW2d 825 (1975), *lv granted* 398 Mich 810 (1976).

not grant the requested relief even if the employee's argument was correct.[5]

Except for *Hix v Besser Co, supra,* whose precedential value is limited, none of the cited Michigan cases provide clear guidance on the question before us. Professor Larson is equally ambiguous. In one section, he states the general rule that the employee cannot place a judgment beyond the reach of his employer by arguing that some or all of it was accounted for by damages for pain and suffering. 2A Larson, Workmen's Compensation Law, § 74.35, p 14-246. See also *Pelkey v Elsea Realty & Investment Co, supra.* However, he later presents another general rule for wrongful death actions in which he states that the employer can seek reimbursement only from the shares "of such dependents as have received compensation". 2A Larson, Workmen's Compensation Law, § 74.42, p 14-255.

Only one foreign jurisdiction case cited by Larson is directly on point. In *Brocker Manufacturing & Supply Co, v Mashburn,* 17 Md App 327; 301 A2d 501 (1973), it was held that the compensation carrier was not entitled to any portion of the wife's recovery for loss of consortium. The other cases cited by Larson are less helpful because they involve situations in which the employee was killed and one or more of the tort plaintiffs were direct recipients of worker's compensation death benefits. Roughly analogizing the varied situations in those cases to the consortium issue in the present case, it appears that the majority of the decisions would not allow the compensation carrier to reach that portion of the judgment.[6]

---

[5] *Arnett v General Motors Corp,* 22 Mich App 658; 177 NW2d 704 (1970), is similar in some respects. The employee and his wife there settled their tort claims in an agreement which did not segregate damages. The consortium question was never raised in that action, but it is worth noting that the employer was allowed a reimbursement and credit lien against the entire judgment.

[6] The cases which would not allow recovery are *Enghusen v H.*

None of the previously cited authorities conclusively determine the question before us. Additional policy and statutory interpretation arguments could be made for both sides.[7] But no definitive answer would ever emerge. After considering the competing arguments and policy considerations, we affirm the trial court's ruling that ECU is not entitled to any portion of Mrs. Lone's loss of consortium recovery.

II. *Is ECU required to pay a portion of the plaintiff's attorney fees for that portion of the judgment which is treated as an advance payment credit?*

ECU concedes that it must pay a proportionate share of the attorney fees for the $25,867.13 which it will receive from the judgment as reimbursement for past benefits paid. However, the trial judge also required ECU to pay attorney fees for the $12,504.34 advance payment credit portion of Mr. Lone's judgment. ECU contends that this was improper, especially since it is contesting its obligation to pay further compensation benefits and may never actually use the advance payment credit. The question of whether compensation carriers must pay attorney fees for advance payment credits was recently before the Supreme Court.

*Christiansen & Sons Inc,* 259 Minn 442; 107 NW2d 843 (1961), *Holley v Stansfield,* 186 F Supp 805 (ED Va 1960), *Anderson v Borough of Greenfield,* 442 Pa 11; 273 A2d 512 (1971), *Brocker Manufacturing & Supply Co v Mashburn, supra,* and *Maryland Casualty Co v Rowe,* 256 Ark 221; 506 SW2d 569 (1974). The two cases which would allow recovery are *Fisher v Missoula White Pine Sash Co,* 164 Mont 41; 518 P2d 795 (1974), and *Beam v Maryland Casualty Co,* 477 SW2d 510 (Tenn, 1972).

[7] There is a danger that attorneys or sympathetic juries will allocate a disproportionate amount of recoveries to the spouse's loss of consortium damages. Trial courts and the Workmen's Compensation Bureau should be alert to this possibility and take appropriate actions to prevent it.

*Kroll v Hyster Co,* 398 Mich 281; 247 NW2d 561 (1976). Unfortunately, only four justices participated in *Kroll* and those who did participate split 2-2. The only point which is conclusively established by *Kroll* is that the trial judge in the present case erred by requiring ECU to pay the attorney fees immediately.[8] Two of the justices (Chief Justice Kavanagh and Justice Levin) would hold that the carrier is not required to pay any attorney fees for the advance payment credit. The other two participating justices (Justice Williams and Justice Coleman) would hold that the attorney fees should be paid in future installments as the carrier actually benefits from the advance payment credit.

This question will be resolved by the Supreme Court's decisions in several cases which were argued before that Court on June 9, 1977. Those cases include two appeals from published opinions of this Court which held that the carrier was required to pay attorney fees in return for the advance payment credit. *Schalk v Michigan Sewer Construction Co,* 62 Mich App 658; 233 NW2d 825 (1975), *lv granted* 398 Mich 810 (1976), and *Crawley v Schick,* 48 Mich App 728; 211 NW2d 217 (1973), *lv granted* 398 Mich 811 (1976).[9]

The two opinions in *Kroll v Hyster, supra,* established that both *Crawley* and *Schalk* will at least be reversed in part. We assume that the majority opinion in those cases will adopt one of the opinions in *Kroll.* But we have no present way of knowing which view will prevail and it will be some time before the Supreme Court decides those

---

[8] The trial judge reduced the reimbursement payment to ECU by its share of the attorney fees.

[9] In Crawley, the appeal to the Supreme Court is from a July 7, 1975, unpublished Order of this Court, not from the published opinion which appears in Volume 48 of the Michigan Appeals Reports.

cases. Its decision will finally determine the outcome in the present case, but, in order to expedite this litigation, we adopt the reasoning of Chief Justice KAVANAGH's opinion in *Kroll v Hyster, supra,* and hold that ECU should not be required to pay attorney fees for that portion of the judgment which is treated as an advance payment credit. According to the statute, those fees are to be apportioned among the parties "as their interests appear at the time of the recovery". MCLA 418.827(6); MSA 17.237(827)(6). When judgment was entered in the present case, ECU had no fixed liability for future compensation payments. Therefore, its interest at the time of the judgment was limited to the $25,867.13 reimbursement for benefits already paid. The ruling of the trial court on this point is reversed.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion. No costs, neither party having prevailed in full.