TUCKER v CLARE BROTHERS LIMITED

Docket No. 135054. Submitted May 5, 1992, at Grand Rapids. Decided
    November 2, 1992, at 9:05 A.M.

   Maurice and Donna Tucker brought an action in the Cheboygan
   Circuit Court against Clare Brothers Limited, seeking damages
   for his injuries and her loss of consortium resulting from a fall
   Maurice suffered in the course of employment with R. A. Town-
   send Company while delivering a furnace made by Clare Broth-
   ers. Citizens Insurance Company, Townsend's workers' compen-
   sation insurer, notified the Tuckers that it would assert a lien
   against any recovery by Maurice Tucker in the action against
   Clare Brothers. Neither Citizens nor Townsend formally moved
   to intervene in the action. The Tuckers and Clare Brothers
   settled and submitted a proposed judgment to the court that
   awarded more to Donna for her loss of consortium than to
   Maurice for his injuries. Counsel for Townsend and Citizens
   filed a joint appearance, contended that the proposed apportion-
   ment of damages was an attempt to circumvent the workers'
   compensation lien, and requested an evidentiary hearing re-
   garding the true extent of the Tuckers' respective damages.
   The court, Robert C. Livo, J., entered judgment as proposed
   under the settlement. Townsend and Citizens appealed.

       The Court of Appeals *held:*

       1. In the absence of an objection in the trial court or a cross
   appeal by Clare Brothers regarding the participation of Town-
   send and Citizens without their formal intervention in the
   action, Townsend and Citizens are not barred from seeking an
   appeal of the judgment. Furthermore, Townsend and Citizens
   are real parties in interest, whose failure to intervene does not
   impair their rights with respect to the workers' compensation
   lien, and the procedural defect of their failure to intervene can
   be corrected pursuant to MCR 7.216(A)(2), under which the
   Court of Appeals may allow the addition of parties at its
   discretion.

       2. Because the right of an employer or a workers' compensa-

REFERENCES

Am Jur 2d, Workers' Compensation § 456.
See ALR Index under Subrogation; Workers' Compensation.

tion insurer to reimbursement for benefits paid an injured employee does not extend to a spouse's recovery for loss of consortium in a third-party tort action, and because the apportionment of damages in this case appears to have been made in order to circumvent Townsend's and Citizen's workers' compensation lien, remand is required for an evidentiary hearing with respect to each of the Townsends' actual damages and for reapportionment of the settlement that is consistent with those damages.

Reversed and remanded for further proceedings.

R. C. KAUFMAN, J., dissenting, stated that an employer or workers' compensation carrier who fails to formally intervene in a worker's third-party tort action should not be allowed to object to settlement terms. The majority's decision rewards employers and insurers for lack of diligence and fails to provide guidance to the trial court in determining a proper apportionment of damages.

WORKERS' COMPENSATION — THIRD-PARTY TORT RECOVERIES — EMPLOYERS' OR INSURERS' LIEN.

An employer or workers' compensation insurer who asserts a lien against possible recovery of damages by an injured worker in a third-party tort action without formally intervening in the action may challenge a settlement of the action where an award of damages for the worker's spouse for loss of consortium exceeds the worker's award of damages and appears to have been made in order to circumvent the employer's or insurer's workers' compensation lien (MCL 418.827; MSA 17.237[827]).

*Fordney, Cady, Mastromarco & Jahn, P.C.* (by *Jo Ellen O'Connor*), for Clare Brothers Limited.

*Hanba, Lazar & Della Santina* (by *Geoffrey D. Lawrence*), for R. A. Townsend Company and Citizens Insurance Company.

Before: HOOD, P.J., and CONNOR and R. C. KAUFMAN,* JJ.

CONNOR, J. Appellants R. A. Townsend Company and Citizens Insurance Company appeal as of right from a final judgment entered on October 29, 1990,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

in favor of plaintiffs Maurice and Donna Tucker in their action for personal injury. We remand to the trial court for additional proceedings.

Maurice Tucker suffered personal injuries while in the course of delivering a furnace for his employer, R. A. Townsend Company. Plaintiffs sued the manufacturer of the furnace being delivered, defendant Clare Brothers Limited. It was alleged that plaintiff was injured when a plastic band holding the furnace in the packaging broke while the furnace was being unloaded from the truck, causing plaintiff to fall. Plaintiff Maurice Tucker claimed he suffered severe physical injuries to his shoulders, back, head, skeletal frame, and internal organs. Plaintiff Donna Tucker alleged that as a result of her husband's injuries, she suffered a loss of consortium.

On September 6, 1990, an attorney for Citizens Insurance Company, Townsend's workers' compensation carrier, wrote to plaintiffs' attorney regarding the trial date of September 17, 1990. The letter also provided notice to plaintiffs that Citizens was asserting its workers' compensation lien for over $100,000 in weekly and medical benefits paid to plaintiff Maurice Tucker. Copies of the letter were provided to defense counsel and the trial court.

Instead of proceeding to trial as scheduled, plaintiffs and defendant agreed to settle, and on October 4, 1990, plaintiffs filed a motion for entry of judgment. The proposed judgment provided that plaintiff Donna Tucker would receive $30,000, while plaintiff Maurice Tucker would receive $10,000. Costs would not be awarded to either side.

On October 26, 1990, Townsend and Citizens filed a joint appearance and answer to the motion for entry of a judgment. In the answer, Townsend and Citizens requested that the proposed judgment not be entered and that an evidentiary hearing be

held to determine plaintiff Donna Tucker's actual damages. Townsend and Citizens alleged that the allocation of the damages between the two plaintiffs was disproportionate and an attempt to circumvent the workers' compensation lien because any award made to plaintiff Donna Tucker could not be reached to satisfy the lien.

The trial court heard the motion for entry of a judgment on October 29, 1990, and ruled as follows:

*The Court:* Well, as I perceive the matter, we have a case here involving a closed-head injury to an individual who would receive, as I understand it, $10,000 under the $40,000 settlement as allocated in the proposed judgment. The spouse would receive $30,000. And the rationale for this is that the liability of Clare Brothers, Limited, was tenuous at best and, further, that the mediation panel awarded $30,000 as its considered opinion as to how much the case was worth. And also, there was the prospect of a significant amount of dollars involved in possible sanctions if the plaintiff proceeded with his claim, notwithstanding the fact that the mediators had assessed the case at less than what the settlement was.

So it seems to me that, first of all, as to the value of the case, the $40,000 settlement is appropriate and reasonable. It's certainly not excessive or it's not a sham. It looks to me like, under the facts and circumstances of this case, it's a bona fide, arm's length settlement. Now the question then becomes whether the allocation is appropriate.

It seems to me again that even though there's no doubt in my mind that the dollar amount of the medical and the pain and suffering that Mr. Tucker sustained would ordinarily be considered greater than what his wife's loss of consortium would be, under the facts and circumstances of this case, the value of his interest was substan-

tially diminished by the fact of the mediator's award of such a comparatively low amount and also the fact that the case was one of tenuous liability. Certainly her claim would be one of some independence and magnitude that contrasted with his claims status.

I think, under the facts and circumstances of this case as I understand them, that the judgment is appropriate, and I've signed it. We're never going to reach perfection. I don't find it to be the kind of derogation of the work comp carrier's rights that would warrant its not being approved, so I've signed it.

Townsend and Citizens filed this appeal, arguing that the trial court erred in approving the settlement without first granting their request for an evidentiary hearing regarding the actual damages sustained by plaintiff Donna Tucker for loss of consortium. Townsend and Citizens argue that the allocation of the settlement evidences an intent to circumvent the lien for workers' compensation proceeds and that the parties must justify the division provided in the settlement.

Initially, we must address defendant's argument that Townsend and Citizens never formally intervened in this matter by complying with MCR 2.209(C) and should have been barred from objecting to the settlement both below and on appeal. This issue was first raised on appeal. Defendant did not file a cross appeal challenging Townsend's and Citizens' appearance in this case in the lower court. For these reasons, we could decline to address the issue. *Joyce v Vemulapalli*, 193 Mich App 225, 228; 483 NW2d 445 (1992); *Kim v Ford Motor Co*, 170 Mich App 544, 550; 429 NW2d 203 (1988). However, we note that Townsend and Citizens are real parties in interest and consequently they could have intervened in this case. The par-

ties' treatment of Townsend and Citizens' appearance and answer acknowledges this. Had plaintiffs or defendant objected below on the ground that Townsend and Citizens did not comply with the court rules for intervention, any error could have been easily corrected, and it is clear that Townsend and Citizens would have been allowed to intervene. See *Harrison v Ford Motor Co,* 370 Mich 683, 686; 122 NW2d 680 (1963); *Mason v Scarpuzza,* 147 Mich App 180, 184-185; 383 NW2d 158 (1985); MCL 418.827(1); MSA 17.237(827)(1). Compare *American States Ins Co v Albin,* 118 Mich App 201, 209-210; 324 NW2d 574 (1982); *Kolar v Hudson,* 55 Mich App 114, 118-120; 222 NW2d 53 (1974).[1] Moreover, although the better practice is to formally intervene, whether one has the right to intervene does not affect the statutory right to a lien against any proceeds of the third-party action. A workers' compensation carrier is not under an obligation to intervene in a third-party tort action in order to protect its statutory lien. *Fritsch v Magnaflux Corp,* 150 Mich App 573, 578; 389 NW2d 94 (1986); *Ohio Farmer's Ins Co v*

---

[1] We believe these cases, which generally hold that an appellant who does not perfect his status as an intervening party lacks standing as an aggrieved party under MCR 7.203(A), can be distinguished. In *American States,* the appellant was not granted the status of an intervening party and also failed to perfect the record by filing pleadings in support of intervention. *American States, supra,* pp 209-210. In *Kolar,* the appellant also failed to state in a pleading the grounds for intervention. Because the appellant in *Kolar* was requesting affirmative action against the parties, a complaint was required, not merely an answer or other response. Consequently, the failure to file a complaint setting forth the grounds for intervention was fatal to his appeal. However, he also was not bound by the trial court's determinations in the original action. *Kolar, supra,* pp 119-120. In contrast, in the case at bar, the intervening parties' participation was limited to protecting their respective rights to a lien, which we believe was adequately explained by their joint answer in objecting to the proposed judgment. It is clear that all parties and the trial court believed Townsend and Citizens had a right to participate in these proceedings to protect their lien. Thus, to affirm for the reason that no formal motion to intervene was made would merely place form over substance.

*Neff,* 112 Mich App 53; 315 NW2d 553 (1981).[2]

---

[2] Some comment at this point is necessary to address the concerns raised by Judge R. C. KAUFMAN in his dissent. First, the dissenting opinion ignores the statutory mandate that any recovery against a third party *"shall first reimburse the employer or carrier for any amounts paid or payable under this act* to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits."* MCL 418.827(5); MSA 17.237(827)(5); emphasis added.

Second, nothing in MCL 418.827; MSA 17.237(827) mandates that the allocation of any recovery be dependent upon the employer's or the carrier's actual intervention; these parties are given the right to intervene, but are not required to intervene. MCL 418.827(1); MSA 17.237(827)(1).

Consequently, we believe that the Legislature has given a priority to the employer's or the carrier's right of first recovery, and has chosen not to make this right of recovery dependent upon formal intervention. In this case, the employer and the carrier both informally objected to the proposed settlement before it was approved by the trial court, and the parties did not object to either having standing to make objections below. We believe that the parties' failure to raise any objections to Townsend's and Citizens' failure to formally intervene waives the issue. As we have already noted, both Townsend and Citizens had the right to intervene and any error associated with failing to formally do so could have been easily corrected in the trial court if the parties had made timely objections. As a matter of judicial economy, we also believe that intervention is the favored method for resolving such issues, rather than creating a multiplicity of suits by employers and insurers filing separate actions against third-party tortfeasors, as the dissent endorses.

We believe Judge KAUFMAN's reliance on out-of-state authority, *Rascop v Nationwide Carriers,* 281 NW2d 170 (Minn, 1979), is also misplaced. In that case, the employer-insurer did not intervene in the tort action or make its objections to the settlement allocation known to the trial judge. *Id.,* p 171. The employer-insurer sent a letter to the employee's attorney, stating its objections. However, the case was settled in the trial court with no objection on the record from the employer-insurer. *Id.* It was not until the employee requested approval of the settlement in the Workers' Compensation Division that the employer-insurer noted its objections. *Id.,* pp 171-172. Under Michigan's workers' compensation law, like Minnesota's law, any issues over apportionment of a third-party tort recovery must be decided in the court where the tort action was resolved, not before the administrative agency. *Seay v Spartan Aggregate, Inc,* 183 Mich App 46, 49-51; 454 NW2d 186 (1990).

We believe that the court in *Rascop* based a portion of its analysis on the failure of the employer-insurer to make any effort to convey its objections to the trial court before the settlement was approved, as well as the failure to formally intervene. *Id.,* pp 171, 173.

In the case at bar, it clearly was communicated to the trial court,

However, because it is clear that Townsend and Citizens in fact sought to timely intervene in this matter, but merely failed to file a motion to intervene, we now correct the lower court record to reflect that Townsend and Citizens are permitted to intervene, nunc pro tunc, to cure this procedural defect. MCR 7.216(A)(2). *Krajewski v Klawon,* 84 Mich App 532, 536-537; 270 NW2d 9 (1978).

This Court has held that neither the employer's nor the workers' compensation carrier's right to reimbursement extends to a spouse's recovery of damages for loss of consortium for nonfatal injuries to the employee. *Treadeau v Wausau Area Contractors, Inc,* 112 Mich App 130, 136-137; 316 NW2d 231 (1982); *Lone v Esco Elevators, Inc,* 78 Mich App 97, 106-108, n 7; 259 NW2d 869 (1977). Compare *Eddington Estate v Eppert Oil Co,* 441 Mich 200, 207, n 5; — NW2d — (1992); *Hearns v Ujkaj,* 180 Mich App 363, 370-371; 446 NW2d 657 (1989). Townsend and Citizens point out that by allocating a greater share of the settlement to plaintiff Donna Tucker, plaintiffs have avoided subjecting the bulk of the settlement to the workers' compensation lien. The parties conceded that this was the result below, but argue that the allocation is justified because defendant would have had to pay a greater portion to Donna

before this settlement was approved, that both the employer and the insurer had no objection to the settlement itself, but that they strenuously objected to the allocation of the settlement proceeds. Their request for an evidentiary hearing was conveyed to the trial court in a timely fashion before the court approved the settlement. While formal intervention is preferable, we believe that it is sufficient if the employer or insurer has appeared in court and notice of specific objections has been provided to the trial court before the settlement is approved. See, e.g., *Easterlin v State,* 330 NW2d 704, 708 (Minn, 1983); *Naig v Bloomington Sanitation,* 258 NW2d 891, 894 (Minn, 1977). The situation where the insurer or employer does not intervene and fails to appear or object before a judgment is accepted is not before this Court.

Tucker rather than Maurice Tucker because of the amount of setoffs that could affect Maurice Tucker's allocation. The only setoff defendant refers to is the workers' compensation insurance benefits paid by Townsend and Citizens. Under MCL 600.6303(4); MSA 27A.6303(4), these benefits do not fall within the definition of a collateral source[3] for purposes of a setoff for economic damages because Townsend and Citizens are entitled by law to a lien for these insurance benefits. Accordingly, the justification for a significant reduction of plaintiff Maurice Tucker's award, but not for plaintiff Donna Tucker's award, has not been established by the parties.

We believe the parties' settlement division does not properly represent the actual amount of damages each plaintiff would have been entitled to receive, given their justification for the allocation. From our review of the record, it appears that the parties have attempted to circumvent the lien by arbitrarily determining an allocation of the settlement. As a result of this settlement, the bulk of the $10,000 payment would go to Townsend and Citizens, after expenses, while the $30,000 payment would go to Donna Tucker. On the record made, we find that the parties have not established that the apportionment of the settlement represented Donna Tucker's actual damages. See *Fritsch, supra,* pp 579-580; *Treadeau, supra,* pp 136-137.

---

[3] MCL 600.6303(4); MSA 27A.6303(4) provides in pertinent part as follows: "As used in this section, 'collateral source' means benefits received or receivable from an insurance policy; . . . worker's compensation benefits . . . . Collateral source does not include . . . benefits paid by a person, partnership, association, corporation, or other legal entity entitled by law to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages. . . ." To apply the collateral source rule for economic damages in this situation would effectively nullify the employer's or insurer's right under MCL 418.827; MSA 17.237(827) to a lien against any recovery from third-party tortfeasors.

We believe that the trial court must conduct an evidentiary hearing to determine the damages sustained by plaintiff Donna Tucker, in comparison to her husband's injuries, and adjust the settlement allocation appropriately.[4]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

HOOD, P.J., concurred.

R. C. KAUFMAN, J. *(dissenting).* I respectfully dissent.

The majority holds that a nonintervening workers' compensation carrier has standing in a third-party tort action brought by an injured employee and his spouse (for loss of consortium) to object to the apportionment of damages between the employee and the spouse determined in a settlement of the tort claims. The majority further holds that when such an objection is made by this nonparty, the trial court is obligated to hold a hearing to

---

[4] We again must address the concerns raised by Judge KAUFMAN in his dissent, regarding our directions to the trial court. We have not established any set formula for the trial court to follow upon remand to assess whether the settlement proposed by the parties was fair. We believe the decision whether the settlement involved a fair apportionment will be dependent upon additional evidence and arguments not currently reflected in the record. In fact, because Donna Tucker's claim was for loss of consortium, reference to a precise formula for determining damages is not appropriate. See, e.g., *In re Claim of Carr,* 189 Mich App 234, 238; 471 NW2d 637 (1991). What other factors will enter into this decision will depend upon what the parties argue before the trial court. In deciding if an allocation is fair, "a court must examine and weigh all the factors existing that bear upon the issue. By necessity, each factual setting will contain different factors to be considered. No hard and fast mathematical ratio can be applicable to all cases without risking gross injustice. Each allocation must turn on its own merits. The court must conduct an ad hoc balancing of the factors and circumstances of the settlement." *Krause v Merickel,* 344 NW2d 398, 403 (Minn, 1984). See also *Locher v Gareis,* 411 NW2d 273, 276 (Minn App, 1987). However, in order to aid appellate review, the trial court must state on the record the findings and conclusions justifying its decision.

determine the value of the damages of the spouse in comparison to the employee's injuries and adjust the settlement allocation appropriately. For the reasons explained more fully below, the majority is wrong.

The majority holding is based on the mistaken assumption that a nonintervening compensation carrier, who merely sends a "lien letter" to protect its rights, has the same rights as one who has formally intervened. As a practical matter this erroneous ruling will result in fewer settlements and more trials. Furthermore, the majority fails to offer any meaningful guidance to trial courts attempting to implement its holding.

In this case, the compensation carrier never formally intervened. Yet the majority is allowing it to object to the settlement reached by the defendant and the plaintiffs. The majority ultimately rejects the substance of the plaintiffs' objections to this by observing:

> Moreover, although the better practice is to formally intervene, whether one has the right to intervene does not affect the statutory right to a lien against any proceeds of the third-party action. A workers' compensation carrier is not under an obligation to intervene in a third-party tort action in order to protect its statutory lien.

While it is true that a workers' compensation carrier is not under an obligation to intervene, its decision to merely protect its lien with a lien letter, instead of formally intervening, may have legal consequences. To say that one has a choice does not mean that ramifications do not flow from choosing. The foregoing statement by the majority is used to justify allowing a nonintervening compensation carrier to have standing to object to a settlement. The majority's statement does not rec-

ognize that the relevant statute, MCL 418.827;
MSA 17.237(827), does indeed treat differently
those compensation carriers who do intervene and
those who do not.

MCL 418.827; MSA 17.237(827) states in part as
follows:

> (1) Where the injury for which compensation is
> payable under this act was caused under circum-
> stances creating a legal liability in some person
> other than a natural person in the same employ or
> the employer to pay damages in respect thereof,
> the acceptance of compensation benefits or the
> taking of proceedings to enforce compensation pay-
> ments shall not act as an election of remedies but
> the injured employee or his dependents or per-
> sonal representative may also proceed to enforce
> the liability of the third party for damages in
> accordance with the provisions of this section. If
> the injured employee or his dependents or per-
> sonal representative does not commence the action
> within 1 year after the occurrence of the personal
> injury, then the employer or carrier, within the
> period of time for the commencement of actions
> prescribed by statute, may enforce the liability of
> such other person in the name of that person. Not
> less than 30 days before the commencement of
> action by any party under this section, the parties
> shall notify, by certified mail at their last known
> address, the bureau, the injured employee, or in
> the event of his death, his known dependents or
> personal representative or his known next of kin,
> his employer and the carrier. Any party in inter-
> est shall have a right to join in the action.
>
> (2) Prior to the entry of judgment, either the
> employer or carrier or the employee or his per-
> sonal representative may settle their claims as
> their interest shall appear and may execute re-
> leases therefor.
>
> (3) Settlement and release by the employee is
> not a bar to action by the employer or carrier to
> proceed against the third party for any interest or
> claim it might have.

\* \* \*

(5) In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits.

Under this statutory scheme, if a third-party tort action by the employee has been commenced within the one-year period, the compensation carrier has two options in order to protect its reimbursement rights for money it has paid for workers' compensation benefits: formally intervene in the action, as is its right under the last sentence of section one, or informally assert its lien and await the outcome of the proceedings. As an intervening party, the compensation carrier has the right, as does any other party in the action, to participate in the proceedings. More importantly, by formally intervening, the compensation carrier fully preserves its right to proceed against the third-party defendant for reimbursement. This right obtains under section three, notwithstanding any settlement by the employee. Thus, should the intervening compensation carrier deem a settlement between the employee-plaintiff and the defendant insufficient, it retains its right to proceed against the tortfeasor.

A compensation carrier who does not intervene, however, is not a party to the action. The majority

fails to cite any authority that arguably gives a nonparty any right to participate in the case. While it is true that a compensation carrier need not intervene to preserve its lien on the proceeds of the third-party tort action going to the employee-plaintiff, there is, absent formal intervention, no law that preserves the compensation carrier's ability to affect the amount of the proceeds. Absent intervention, the compensation carrier's lien remains intact; however, the result of nonintervention will be to remove its ability to affect the amount of the proceeds against which the lien may be satisfied (i.e., the amount of money going to the employee-plaintiff).

None of the cases cited by the majority involve the rights of nonintervening compensation carriers to object to settlements. Indeed, in Michigan, the general rule of law with respect to the rights of intervenors is stated in *Smith v Norton Twp,* 319 Mich 365, 370-371; 29 NW2d 836 (1947), quoting 11 Encyclopedia of Pleading & Practice, pp 509-510:

> "An intervener in a suit between other parties must accept such suit as he finds it, and is bound by the record of the case at the time of his intervention. He cannot raise an issue as to whether the proceedings are regular, nor can he plead exceptions having for their object the dismissal of the action. He cannot raise new issues in the suit, nor insist upon a change in the form of the proceedings. An intervener cannot exercise any rights which are limited to the parties to the action."

Thus, were a compensation carrier to intervene after a settlement had been reached, because of the lateness of its intervention, under *Smith,* it could not be heard to object to the settlement. Yet under the majority's rule, a nonintervening compensation carrier is given greater rights to object.

Certainly this turns the normal state of affairs on its head.

While no Michigan case heretofore has addressed the issue, persuasive authority in other jurisdictions rejects the rule implicit in the majority's holding. In *Rascop v Nationwide Carriers,* 281 NW2d 170, 173 (Minn, 1979), the court held that a compensation carrier lost any right to object to a settlement of a claim for loss of consortium because, inter alia, although it received notice of and even objected to the proposed settlement and distribution, it failed to intervene. The court held: "Therefore, they have no standing to question the settlement and allocation of the proceeds." *Id. Rascop,* of course, merely recognizes the unremarkable proposition that, in order to be heard to object to a proceeding, one must be a party to the proceeding.

While I recognize that the Court of Appeals has consistently been solicitous to the concerns of compensation carriers that, in third-party tort actions, employees and their spouses may attempt to defeat the compensation carrier's right under MCL 418.827(5); MSA 17.237(827)(5) to share in the proceeds of the suit by unfairly allocating a disproportionate amount of the recovery to the spouse's claim for loss of consortium, see *Treadeau v Wausau Area Contractors, Inc,* 112 Mich App 130, 137; 316 NW2d 231 (1982); *Lone v Esco Elevators, Inc,* 78 Mich App 97, 108, n 7; 259 NW2d 869 (1977), this solicitousness is not deserved in the case of a nonintervening compensation carrier.

A compensation carrier who wishes to fully protect its interest has a statutory remedy by intervening. Where a compensation carrier intervenes, by statute, any settlement by the employee-plaintiff has no binding effect on the right of the compensation carrier to proceed against the tort-

feasor for full recovery of its lien. MCL 418.827(3); MSA 17.237(827)(3) could not be clearer:

> (3) Settlement and release by the employee is not a bar to action by the employer or carrier to proceed against the third party for any interest or claim it might have.

Thus a settlement that is perceived by the compensation carrier as unfair to its interest will not affect its ability to pursue its claim against the tortfeasor. The intervening compensation carrier cannot upset the settlement between the employee-plaintiff and the defendant, but can proceed with its claim to trial, even if the employee-plaintiff has settled. The compensation carrier retains its lien on the settlement amount being paid the employee-plaintiff, and can proceed to trial for the remainder of its lien. Given this statutory scheme, courts should not gratuitously give a compensation carrier more protection or remedies by rewarding the nondiligent compensation carrier.[1] As a practical matter, a defendant is unlikely to settle with the employee-plaintiff without also getting a release from the compensation carrier. Nonetheless, the right of the employee-plaintiff and the defendant to settle without agreement from the compensation carrier remains.

The majority's approach allows a compensation carrier to lie back until after settlement, and if the settlement is not to its liking, seek to disrupt

---

[1] There is at least a suggestion in *Detroit v Spivey,* 68 Mich App 295, 299-300; 242 NW2d 561 (1976), and the language of MCL 418.827(3); MSA 17.237(827)(3), that, notwithstanding a suit by the employee, after one year, the compensation carrier may commence a suit on its own behalf. If this is indeed true, there is even less justification for granting standing to a nonintervening compensation carrier to contest the allocation of the settlement. Its interests in satisfying its lien would be fully protected because it would be able to directly sue the tortfeasor, assuming of course it commences its action in a timely fashion.

it. Settlements in personal injury actions are typically products of intense negotiations, and parties justifiably consider and expect the matter closed once settlement is reached. If the compensation carrier intervenes, it will be present at the settlement conference and can fully participate. All parties will be present to engage in the dynamic give and take process of trying to settle a personal injury case. Allowing a nonparty to upset the arrangements of the parties, and their expectations, will only serve to increase the chance that no settlement will be reached.

In cases where the amount of the settlement reached is not great or is less than the amount of the compensation carrier's lien, there may be no real inducement for an employee to settle the claim against the tortfeasor. At this point, the chance that the case will go to trial materially increases. Thus, the result reached by the majority flies in the face of the well-settled policy of the law to encourage settlements. The practical effect of the majority's approach will be to condemn to trial some cases that might have been settled.

The other legal and practical consideration ignored by the majority is how the trial court is to implement the mandate to determine fair apportionment. Indeed, this is a failure of prior decisions such as *Lone* and *Treadeau*. No clue is given the trial court regarding what procedures or standards should be used,[2] or what constitutes a fair apportionment of damages. Is the trial court, after having ascertained the actual value of the employee's and the spouse's damages, to review the settlement's apportionment under a strict mathematical

---

[2] For example, assuming that the plaintiffs have preserved their right to a jury trial, we would be confronted with the question that was belatedly raised by a nonparty to the action: Are they entitled to a jury determination of the factual issue regarding the amount of damages suffered by the employee and the spouse?

approach or some lesser exacting standard? Can the trial court take into consideration the practical problems posed when the settlement amount is far less than the compensation lien? Is the trial court to use the likelihood of plaintiff establishing liability at trial as somehow relevant, and if so, in what way? Without sufficient guidance in answering these questions and many others, it is foreseeable that further litigation at both the trial and the appellate levels will occur. Even if I were to agree with the majority's legal conclusion, I would object to remanding this case under a directive that is so devoid of content that it produces rather than resolves uncertainty in this field.

I would affirm.