STATE OF MICHIGAN
COURT OF APPEALS

LORRI NOLAN and AARON NOLAN,

        Plaintiffs-Appellants/Cross-
        Appellees,

v

RONALD W. CHAPMAN and CHAPMAN &
ASSOCIATES, P.C.,

        Defendants-Appellees/Cross-
        Appellants.

UNPUBLISHED
April 23, 2015

No. 319830
Oakland Circuit Court
LC No. 2012-127362-NM

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and SHAPIRO, JJ.

PER CURIAM.

In this legal malpractice action, plaintiffs appeal from two trial court orders. First, they argue that the trial court erred by granting defendant's second motion for summary disposition. Second, that the trial court erred by denying their motion to amend their complaint. Chapman[1] cross-appeals from the trial court order that denied his first motion for summary disposition. We reverse the trial court's grant of summary disposition in favor of Chapman and its denial of plaintiffs' motion to amend and remand for further proceedings.

## I. FACTS

In 2006, plaintiffs Lorri and Aaron Nolan, wife and husband, began operating Nolan Trucking, a business by which they delivered packages under contract with Federal Express. By 2009, Lorri, working as a full-time driver and delivery person, was earning an average of $1,119.46 per week, exclusive of fringe benefits.

On May 20, 2009, Kimberly Rovinski pulled her Hummer out of a strip mall driveway and struck the delivery truck driven by Lorri on the driver's door. The police were called, found Rovinski at fault, and issued her a citation. As a result of this accident, Lorri began experiencing

---

[1] Defendants Chapman and his law firm will be referred to collectively as "Chapman" in this opinion.

severe back pain, which radiated down her legs and caused numbness in her feet, as well as frequent urination and incontinence. She underwent surgery that did not resolve the problems. Due to the disabling injuries, Lorri began receiving worker's compensation insurance benefits and PIP benefits.

Lorri eventually retained defendant-attorney Chapman to represent her in a third-party tort claim against Rovinski. Chapman filed a complaint and the suit proceeded to case evaluation. In his case evaluation summary filed on Lorri and her husband's behalf, Chapman sought $2,749,035 in damages: $950,000 for pain and suffering, $350,000 for loss of consortium, and $1,449,035 for excess economic damages. Chapman's case evaluation summary included an affidavit from an orthopedic medical expert who averred that Lorri had sustained significant back injuries and urinary incontinence problems as a result of the accident, needed at least one surgical procedure, and was permanently disabled from resuming her occupation with Nolan Trucking. The summary also included medical expert testimony that Lorri was "totally unemployable" as a result of the accident. Rovinski defended on the grounds that Lorri's injuries did not meet the threshold of serious impairment of body function and that the accident did not actually cause injury. Nonetheless, the independent medical examiner retained by Rovinski acknowledged that Lorri's surgery was due to the accident and that she continued to have ongoing work restrictions as a result of the accident.

On June 15, 2010, the case evaluation panel evaluated the settlement value of Lorri's claim at $425,000. The same day, Chapman set a letter to Lorri, reporting the panel's valuation and requesting that she and Aaron meet with him on June 22, 2012. At this meeting, Chapman advised plaintiffs that, in his opinion, the award was adequate and they should accept it. There is a dispute as to what was said in reference to the settlement's effect on Lorri's worker's compensation benefits. Plaintiffs assert that Chapman told them there would be no effect, i.e., Lorri's worker's compensation payments would continue without reduction. Defendant asserts that he correctly informed plaintiffs that Lorri's worker's compensation carrier would not be entitled to reimbursement of any of the benefits it paid during the first three years following the accident. However, defendant does not assert that he advised plaintiffs that Lorri's carrier would be entitled to a statutory reimbursement credit thereafter, in the form of lowered benefit payments.

Plaintiffs agreed to accept the case evaluation. However, the case was not actually resolved via the mutual acceptance of the case evaluation award and the entry of a judgment to that effect in the trial court. Rather, the case was *settled* for $425,000.

Approximately 18 months later, on January 23, 2012, Lorri received a letter from Protective Insurance Company, her former employer's worker's compensation carrier. Protective advised Lorri that if she obtained relief from a responsible third party for the injuries for which she was receiving worker's compensation benefits, Protective was entitled to reimbursement of all benefits paid via the reduction of Lorri's future worker's compensation payments.

Lorri testified that her worker's compensation benefits ceased entirely in January 2012, but began again in approximately October 2012, at a substantially reduced rate. These benefits were reduced due to the operation of MCL 418.827(5), which provides that a worker's

compensation carrier is entitled to be reimbursed for benefits paid when the injured worker recovers third-party damages for the same injury. To the extent those worker's compensation benefits substitute for no-fault benefits, the worker's compensation carrier is not entitled to reimbursement of those payments made in the three years subsequent to the accident. See *Wojciechowski v Central Transport, Inc*, 187 Mich App 116, 120-121; 466 NW2d 372 (1991). However, where the injured party continues to receive worker's compensation benefits beyond this three-year limitation, as in Lorri's case, the carrier is entitled to reimbursement. *Id*. This is accomplished by lowering the injured party's worker's compensation payments until the carrier is fully reimbursed or the reductions consume the entire third-party settlement.[2]

On May 30, 2012, plaintiffs filed the instant complaint asserting legal malpractice against Chapman. The complaint alleged that Chapman had negligently failed to tell plaintiffs about the effect that agreeing to settle the case would have on Lorri's receipt of worker's compensation benefits and that this information was necessary to plaintiffs making an informed decision as to whether to accept the settlement in the amount offered. Plaintiffs attached an affidavit from an expert witness who averred that Chapman was negligent, i.e., violated the applicable standard of care, in failing to advise plaintiffs of the worker's compensation reimbursement provision and the effect of the settlement on Lorri's receipt of those benefits.

On March 5, 2013, Chapman moved for summary disposition. After hearing oral argument, the trial court denied the motion, ruling that "a question of fact exists as to causation and whether Defendant Chapman's alleged error is shielded by the attorney judgment rule." Chapman cross-appeals from this ruling.

On March 11, 2013, plaintiffs moved the trial court to allow them to amend their complaint. Plaintiffs sought to add "the allegation that defendants also breached their duties to plaintiffs by failing to allocate a portion of the third party settlement to the [loss of] consortium claim of Aaron Nolan." Plaintiffs claimed they had been unaware of the viability of this alternative allegation until receiving Chapman's deposition, taken January 21, 2013, and receiving an additional opinion from their expert witness. After hearing oral argument, the trial court denied plaintiffs' motion, ruling that it was both untimely and futile. Plaintiffs appeal this ruling.

On June 12, 2013, Chapman filed a renewed motion for summary disposition. After hearing oral argument, the trial court granted the motion, ruling that plaintiffs could not establish that Chapman's alleged negligence proximately caused them any damages. Plaintiffs appeal this ruling.

---

[2] The formula for calculating this reimbursement was created by the Supreme Court in *Franges v General Motors Corp*, 404 Mich 590; 274 NW2d 392 (1979). The intricacies of the formula are not at issue here. Relevant to this case, under *Franges*, when an injured party receives an award from a third-party tortfeasor, her worker's compensation payments (paid subsequent to the three-year anniversary of the date of injury) are substantially reduced. Per plaintiffs' expert witness, Chapman should have performed a *Franges* calculation and informed plaintiffs that Lorri's worker's compensation payments would be reduced by approximately 47%.

## II.  SUMMARY DISPOSITION

Plaintiffs argue that the trial court erred in granting Chapman's renewed motion for summary disposition and Chapman argues that the trial court erred in denying his first motion for same.[3]  We agree with plaintiff and conclude that Chapman is not entitled to summary disposition.

"The elements of legal malpractice are: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Manzo v Petrella*, 261 Mich App 705, 712; 683 NW2d 699 (2004).

There is no dispute that plaintiffs and Chapman shared an attorney-client relationship, satisfying the first element.  Thus, to survive summary disposition, plaintiffs needed to establish a question of fact as to whether (1) Chapman failed to inform them of the reimbursement provision and that this failure constituted negligent representation, (2) Chapman's negligence proximately caused an injury to plaintiffs, and (3) plaintiffs could demonstrate the fact and extent of their damages.

## A.  NEGLIGENT REPRESENTATION

"In legal malpractice actions, a duty exists, as a matter of law, if there is an attorney-client relationship." *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995).  "An attorney is obligated to use reasonable skill, care, discretion and judgment in representing a client." *Lipton v Boesky*, 110 Mich App 589, 594; 313 NW2d 163 (1981).

There is clearly a question of fact whether Chapman's legal representation was negligent in failing to advise plaintiffs of the effect of the acceptance of the settlement on Lorri's receipt of worker's compensation benefits.  Lorri testified that when consulting with Chapman about accepting the case evaluation award, "I asked him if I had to pay workman's comp back any of

---

[3] This Court reviews de novo a trial court's grant of summary disposition under MCR 2.116(C)(10). *Ernsting v Ave Maria College*, 274 Mich App 506, 509; 736 NW2d 574 (2007). "When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party." *Id*. at 509-510.  All reasonable inferences are to be drawn in favor of the nonmoving party. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010).  "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Ernsting*, 274 Mich App at 509.  "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).  "A genuine issue of material fact exists when the record, giving the benefit of any reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ." *Ernsting*, 274 Mich App at 510.

the money that they had paid me, and he said no, this is different, this is an automobile accident. . . . [H]e said I didn't have to pay it back." Similarly, Aaron testified that, "The only discussion that I really can remember with certainty is asking [Chapman] if we had to pay back workman's comp . . . and we were told no." Indeed, a review of Chapman's deposition reveals that he was himself not familiar with the reimbursement provision at issue. He did not claim that he informed plaintiffs of the operation of the reimbursement provision nor did he directly contradict plaintiffs' accounts of their attorney-client discussions. Finally, plaintiffs' expert explicitly averred that these actions by Chapman breached the applicable standard of care, and Chapman has offered no evidence to contradict this assertion. Thus, plaintiffs have established the second element necessary to survive summary disposition on their claim of legal malpractice. For this reason, we affirm the trial court's denial of Chapman's initial motion for summary disposition.[4]

## B. CAUSATION

"In a legal malpractice action, the plaintiff has the burden of showing that but for the attorney's alleged malpractice, he would have been successful in the underlying suit." *Colbert v Conybeare Law Office*, 239 Mich App 608, 619; 609 NW2d 208 (2000) (quotation marks and citation omitted). "A claim of malpractice further requires a showing of actual injury caused by the malpractice, not just the potential for injury." *Id*. at 620. "In order to establish proximate cause, a plaintiff must show that a defendant's action was a cause in fact of the claimed injury. Hence, a plaintiff must show that but for an attorney's alleged malpractice, the plaintiff would have been successful in the underlying suit. This is the 'suit within a suit' requirement in legal malpractice cases." *Manzo*, 261 Mich App at 712.

As to causation, plaintiffs both testified that they would not have accepted the $425,000 settlement had Chapman advised them of the operation of the reimbursement provision. Upon receipt of the notice from Protective, Lorri called Chapman, upset because "we asked you if we had to pay that back and you told us no because this was an auto accident." She informed Chapman that if she had known about the reimbursement requirement, she never would have accepted the case evaluation or a settlement in the same amount. Plaintiffs allege that, had Chapman properly advised them, they would have proceeded with the underlying case in the hopes of obtaining a larger settlement or jury verdict. Thus, plaintiffs have established a question of fact as to whether Chapman's alleged negligence caused them injury, satisfying the third element necessary to survive summary disposition.

Chapman argues that because plaintiffs cannot establish that they would have received a higher settlement or jury verdict had they rejected the $425,000 settlement, any damages are "inherently speculative." Certainly, the outcome of a hypothetical trial that did not occur cannot

---

[4] As to the attorney-judgment rule, Chapman argues that he is protected by the rule because he reasonably advised plaintiffs to accept a settlement in the amount of $425,000. We reject this argument because, as discussed below, the question is not whether the $425,000 amount was itself unreasonable, but whether plaintiffs were damaged by accepting a settlement in that amount without the knowledge that their acceptance would significantly lower Lorri's future worker's compensation payments.

be known with absolute certainty. However, making that determination is one with which legal malpractice juries are routinely entrusted. Indeed, to accept Chapman's argument would require summary disposition in favor of a defendant-attorney in nearly every legal malpractice case, as the jury must always determine, by preponderance of the evidence, what the earlier outcome would have been if the attorney not been professionally negligent. See, e.g., *Espinoza v Thomas*, 189 Mich App 110, 117; 472 NW2d 16 (1991). A legal malpractice jury may properly hear the evidence and evaluate the "suit within a suit," provided the other necessary elements are satisfied. *Manzo*, 261 Mich App at 712. For example, a plaintiff may maintain a legal malpractice action against an attorney who failed to file a claim within the applicable statute of limitations. In such a situation, the legal malpractice jury would be charged with evaluating the merits of an underlying claim that was not, and could not, be brought to trial. Similarly, a plaintiff may assert legal malpractice against an attorney who failed to present relevant evidence in an underlying trial. In such cases, the legal malpractice jury is charged with determining whether, had the evidence been admitted, the underlying jury would have awarded plaintiff larger damages. This is the essence of the "suit within a suit" requirement and the fact that the result of that evaluation cannot be known until the jury renders it does not mean, as Chapman suggests, that it is "inherently speculative."

## C. DAMAGES

We now turn to the most vigorously contested issue in this case, whether plaintiffs have established a question of fact as to the "fact and extent" of their damages. *Id*. Chapman argues that because Lorri's worker's compensation carrier was entitled to full reimbursement by way of future benefit payment reductions regardless of the settlement or judgment amount, the actual amount of the settlement is of no consequence. He essentially argues that because Lorri would receive reduced worker's compensation payments whether she settled her case for $425,000 or won a jury verdict of $2,000,000, there can be no monetary loss. By focusing solely on the fact that there will be some reduction in worker's compensation payments for some time, no matter the amount of the settlement or verdict, Chapman simply ignores the gravamen of plaintiffs' claim.

Plaintiffs argue, and we agree, that in making a reasoned decision whether or not to accept a settlement, they would take into consideration its total effect on their financial future and its ability to make them whole, given Lorri's permanent disability. Lorri would receive a lump sum of any settlement or jury verdict (minus attorney fees, etc.), and then her worker's compensation payments would be significantly lowered for a lengthy period of the time. The first reason we reject Chapman's reading is that plaintiffs undoubtedly evaluated the settlement in the context of their financial security in light of Lorri's permanent disability and inability to be employed. That is, they could only determine if the settlement amount was adequate to give up the right to trial if they were informed that Lorri's worker's compensation payments, a significant part of their future income, would be substantially reduced. While that reduction was unavoidable, knowledge of its existence and extent (which would come from their attorney) was unquestionably necessary in order to reach a reasoned decision whether to settle in the amount offered or to instead proceed to trial. Significantly, both Lorri and Aaron testified that had they known of the reimbursement provision, they would have rejected a settlement of $425,000 and sought a higher settlement or proceeded to trial. Moreover, it is by no means clear that the amount of the reimbursement would be the same in all circumstances. If Lorri received a large

jury verdict but passed away prior to the full reimbursement credit being extinguished, her estate would maintain the balance of the trial's proceeds, as her worker's compensation payments would cease upon her death.

Accordingly, the remaining question before us is relatively simple: whether plaintiffs presented evidence sufficient to establish a question of fact whether they would have received a higher settlement or jury verdict had they rejected the $425,000 settlement and proceeded in the underlying case, i.e., whether they satisfied the "suit within a suit" requirement.

Whether a jury would accept the proofs of damages in the suit within the suit portion of the claim is, of course, unknown at this time. However, it is quite clear that there were proofs of damages to present to an underlying jury that, if accepted, would have resulted in a much larger judgment. This is readily seen by reference to the case evaluation summary prepared by Chapman himself in the underlying case. First, there was very strong evidence that the other driver was at fault in the crash. Second, Lorri's treating physicians testified or averred that the crash caused serious injuries which required surgery and left her permanently disabled. Even the physician hired by Rovinski to evaluate Lorri's injuries agreed that her surgery was necessitated by the accident and that she continued to have work restrictions as a result of her injuries. And, if the jury concluded that Lorri was permanently disabled, as her doctors stated, then her wage losses could be readily determined based upon her past earnings. Similarly, though there were factual disputes as to the extent of Lorri's injuries,[5] she possessed sufficient evidence, both medical and lay, from which a reasonable jury could find that she had suffered a "serious impairment of body function" under MCL 500.3135(1), thus providing for an award of noneconomic damages which, in his case evaluation summary, Chapman calculated to be $1,300,000. Thus, plaintiffs have established a question of fact as to the "fact and extent" of their damages, the final element necessary to survive summary disposition on their claim of legal malpractice.

Accordingly, the trial court erred in granting summary disposition in favor of Chapman.

### III. MOTION TO AMEND

Plaintiffs sought leave to amend their complaint to add an allegation that if Chapman had allocated a portion of the settlement to Aaron's claim of loss of consortium, that portion of the settlement would not have been subject to the worker's compensation reimbursement provision of MCL 418.827(5). The trial court denied on the motion on grounds of untimeliness and futility. We reverse.[6]

---

[5] For example, Rovinski's medical evaluator placed fewer restrictions on Lorri's activities due to her lumbar injuries and disagreed with Lorri's physicians' conclusion that her incontinence was a result of the injuries sustained in the accident.

[6] "We review for an abuse of discretion a circuit court's decision to grant or deny leave to amend a pleading; we will only reverse the court's ruling if it occasions an injustice. A court does not abuse its discretion if it selects an outcome falling within the range of reasonable and principled

MCR 2.118(A)(2) provides that leave to amend a pleading "shall be freely given when justice so requires."

> Because a court should freely grant leave to amend a complaint when justice so requires, a motion to amend should ordinarily be denied only for particularized reasons. Reasons that justify denying leave to amend include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the defendant, or futility. [*Wormsbacher v Seaver Title Co*, 284 Mich App 1, 8; 772 NW2d 827 (2009) (citation omitted).]

## A. TIMELINESS

> Delay, alone, does not warrant denial of a motion to amend. However, a motion may be properly denied if the delay was in bad faith or if the opposing party suffered actual prejudice as a result. Prejudice to a defendant that will justify denial of leave to amend is the prejudice that arises when the amendment would prevent the defendant from having a fair trial; the prejudice must stem from the fact that the new allegations are offered late and not from the fact that they might cause the defendant to lose on the merits. [*Amburgey v Sauder*, 238 Mich App 228, 247; 605 NW2d 84 (1999) (citations omitted).]

Plaintiffs' motion was untimely in that it was filed one week after the close of discovery. However, there is no indication in the record, nor any allegation by Chapman, that this delay was the product of bad faith. Plaintiffs' expert submitted his supplemental answer alleging the amended claim on February 12, 2013, and plaintiffs filed their motion within a reasonable time thereafter.

More significant, Chapman also has not alleged how he would have suffered unfair prejudice were the amendment allowed, other than vague generalizations that it might have affected his ability to prepare for trial. However, Chapman had the opportunity to fully cross-examine both plaintiffs at their depositions, during which they were asked, on direct examination, several questions clearly designed to elicit facts to support a loss of consortium claim. Indeed, Chapman himself sought damages for loss of consortium in the underlying case evaluation summary. Moreover, if additional discovery was required, it was readily available as plaintiffs expressed their willingness to be subject to a second deposition and to bear the costs associated with this further discovery. Finally, plaintiffs' motion was filed on March 11, 2013, more than three months in advance of the scheduled trial date. Because leave to amend is to be granted freely, and Chapman has not alleged an adequate reason for denying plaintiffs' motion other than general delay, which is insufficient by itself, the trial court erred in denying the motion on these grounds.

---

outcomes." *Boylan v Fifty Eight LLC*, 289 Mich App 709, 727; 808 NW2d 277 (2010) (citations omitted).

## B. FUTILITY

"An amendment would be futile if it is legally insufficient on its face . . . ." *Wormsbacher*, 284 Mich App at 8-9. Again, plaintiffs sought to add an allegation that Chapman should have sought to allocate a portion of the settlement to Aaron for loss of consortium, which would not have been subject to the worker's compensation reimbursement provision. The futility of this proposed amendment must be analyzed in light of the cause of action. To reiterate, "[t]he elements of legal malpractice are: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Manzo*, 261 Mich App at 712.

Chapman argues that plaintiffs' proposed amendment is futile because under MCR 2.403(H)(3),[7] a case evaluation panel must treat derivative claims (such as those for loss of consortium) as a single claim with the primary claim and make a single award. Thus, Chapman asserts that he was barred by court rule from seeking plaintiffs' proposed allocation. This argument fails because, as discussed, the underlying case was not resolved by the mutual acceptance of the case evaluation and entry of a judgment in the trial court; rather, the case was settled out of court.

Loss of consortium damages obtained from a third-party tortfeasor and paid to an injured plaintiffs' spouse are not subject to the worker's compensation reimbursement provision of MCL 418.827(5). *Jones v McCullough*, 227 Mich App 543, 545-546; 576 NW 698 (1998). In *Jones*, the plaintiffs filed a third-party automobile negligence action seeking damages for injuries and loss of consortium. *Id*. at 544. "The parties settled the case, which was then dismissed." *Id*. The case was reopened when the injured plaintiff's worker's compensation insurance carrier argued that it was entitled to reimbursement in the amount of the entire settlement under MCL 418.827(5). *Id*. at 545. The trial court agreed, but this Court reversed, holding that the carrier was entitled to reimbursement of the proceeds paid only to the injured plaintiff, not those allocated to the injured plaintiff's spouse for loss of consortium and, accordingly, remanded the case to the trial court for proper apportionment. *Id*. at 547. Thus, *Jones* stands for the proposition that if the parties allocate some portion of settlement proceeds to an injured plaintiff's spouse for loss of consortium, the injured plaintiff's worker's compensation carrier is not entitled to reimbursement of the amount allocated to the spouse.

A party may not "arbitrarily determin[e] an allocation of the settlement" in an attempt to circumvent the reimbursement provision. See *Tucker v Clare Bros Ltd*, 196 Mich App 513, 521; 493 NW2d 918 (1992). The allocation must reasonably represent the spouse's actual damages. *Id*. In this case, Chapman believed that Aaron had suffered actual damages, as his case evaluation summary sought $350,000 in loss of consortium damages. There is also evidence in the record to support the viability of Aaron's claim. "Loss of consortium technically means the

---

[7] MCR 2.403(H)(3) provides: "If one claim is derivative of another (e.g., husband-wife, parent-child) they must be treated as a single claim, with one fee to be paid and a single award made by the case evaluators."

loss of conjugal fellowship. However, it is legally recognized as including loss of society, companionship, service, and all other incidents of the marriage relationship." *Thorn v Mercy Mem Hosp Corp*, 281 Mich App 644, 662; 761 NW2d 414 (2008) (quotation marks and citation omitted). Aaron testified that, due to the injuries Lorri suffered in the subject automobile accident, their sex life has become "very infrequent, painful for her" and that Lorri can no longer engage in many of their former physical hobbies, such as bowling, racquetball, tennis, and taking long walks. Lorri's testimony was consistent with Aaron's in this regard, and added that Aaron now has to do "everything" for her. Of course, if this alternative claim proceeds to trial in this legal malpractice claim, the fact and extent of Aaron's loss of consortium damages and the resulting allocation would be a question for the jury.

In sum, because the underlying case was settled out of court and Aaron's loss of consortium claim was factually and legally viable, Chapman could have sought to allocate some of the settlement to Aaron. That amount would have fallen outside of the worker's compensation reimbursement provision and, therefore, the trial court erred in ruling that plaintiffs' proposed amendment was futile.

Accordingly, the trial court abused its discretion in denying plaintiffs' motion to amend their complaint.

## IV. CONCLUSION

We reverse the trial court's grant of Chapman's second motion for summary disposition and its denial of plaintiffs' motion to amend their complaint. We affirm the trial court's denial of Chapman's first motion for summary disposition. The case is remanded for proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro

-10-